## ATCHISON, TOPEKA & SANTA FE RAILWAY CO. *v.* PUBLIC UTILITIES COMMISSION OF CALIFORNIA ET AL.

NO. 22.

Argued October 14, 1953.—Decided November 9, 1953.

*Douglas F. Smith* argued the cause for appellant in No. 22 and *Burton Mason* argued the cause for appellant in No. 43. With them on a joint brief were *Jonathan C. Gibson, R. S. Outlaw, Robert W. Walker, Kenneth F. Burgess* and *Arthur R. Seder, Jr.* for appellant in No. 22, and *George L. Buland, E. J. Foulds* and *Randolph Karr* for appellant in No. 43.

*Roger Arnebergh* argued the cause for appellees in No. 22. With him on the briefs were *Bourke Jones* for the City of Los Angeles, appellee in that case, and *Henry McClernan* and *John H. Lauten* for the City of Glendale in No. 43. *Ray L. Chesebro* was also with them on statements opposing jurisdiction and motions to dismiss or affirm.

*Hal F. Wiggins* argued the cause for appellees in No. 43. With him on the briefs was *Everett C. McKeage* for the Public Utilities Commission.

MR. JUSTICE MINTON delivered the opinion of the Court.

These cases present the same questions of law and will be disposed of together. The Public Utilities Commission of California entered orders[1] authorizing the construction of certain grade separation improvements and allocating the costs therefor, pursuant to § 1202 of the

---

[1] The final orders may be found at 51 Cal. P. U. C. 771 and 51 Cal. P. U. C. 788.

Public Utilities Code of California.[2]   On petitions to the Supreme Court of California, that court denied review of the Commission's orders,[3] and these appeals followed. We postponed jurisdiction until a hearing on the merits.

We think the Commission's orders must be treated as an act of the legislature for purposes of determining our jurisdiction under 28 U. S. C. § 1257 (2).  *Live Oak Water Users' Assn.* v. *Railroad Commission,* 269 U. S. 354, 356; *Lake Erie & Western R. Co.* v. *Public Utilities Commission,* 249 U. S. 422, 424.  The Commission has construed § 1202 as authorizing these orders.  The appellants presented squarely to the Supreme Court of California their contention that in the allocation of costs, these orders take their property without due process of law and are so arbitrary and burdensome as to constitute an interference with interstate commerce, in violation of

---

[2] "§ 1202.  Exclusive powers of commission.  The commission has the exclusive power:

"(a) To determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use, and protection of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of each crossing of a public or publicly used road or highway by a railroad or street railroad, and of a street by a railroad or vice versa, subject to the provisions of Sections 1121 to 1127, inclusive, of the Streets and Highways Code so far as applicable.

"(b) To alter, relocate, or abolish by physical closing any such crossing heretofore or hereafter established.

"(c) To require, where in its judgment it would be practicable, a separation of grades at any such crossing heretofore or hereafter established and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the construction, alteration, relocation, or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the State, county, city, or other political subdivision affected." Deering's Cal. Pub. U. C. A., 1951.

[3] 40 Adv. Cal., No. 2, Minutes, 1; 40 Adv. Cal., No. 15, Minutes, 1.

the Constitution of the United States. In sustaining the Commission's orders by denying writs of review, the Supreme Court of California upheld the statute as applied by the Commission, and the cases are properly here on appeal. *Kansas City S. R. Co.* v. *Road Improvement District,* 256 U. S. 658, 659–660.

The principal question presented by these appeals is whether the allocation of the reasonable cost of grade separation improvements is arbitrary as to the railroads unless imposed on the basis of benefits received, or, since the costs are incurred in the exercise of the police power in the interest of public safety, convenience and necessity, may they be allocated on the basis of fairness and reasonableness.

### No. 22.

In this case, the Commission authorized the enlarging of two existing railroad underpasses where the Santa Fe tracks cross Washington Boulevard in Los Angeles. These underpasses were constructed in 1914 under an agreement between the railroad and the City providing that each party was to pay one-half of the cost. The Commission found the structures to be 75% depreciated. When constructed, their chief utility was to facilitate access to a garbage reduction plant. Washington Boulevard is now one of the main east and west thoroughfares of Los Angeles, and other streets and highways feed into it. It is not a part of the State highway system nor is it a freeway. The grade separations concerned here are in one of the principal industrial districts of the City and are a traffic bottleneck. For most of its length, Washington Boulevard is 60 feet wide, but at the site in question, the roadway narrows to 20 feet, with a vertical clearance of less than 14 feet. The City's easement at this point is 90 feet. As improved, two 33-foot roadways and two 7-foot sidewalks will be provided, and the underpasses will be heightened. The improvement is being made to

promote the safety and convenience of the public and to meet vastly increased local transportation needs, made necessary by the rapid growth of the City. In 1910 the City had a population of 102,000, in 1920 of 576,000, and in 1948 of 1,987,000. Los Angeles County's population in 1910 was 504,000 and in 1948 was over four million. Vehicular traffic in the area has increased tremendously since construction of the present underpasses in 1914.

Considering all of these facts and evidence by the railroad that there were no benefits to be derived by the railroad from this improvement, the Commission decided that there "is a need for widening and increasing the height of the existing underpasses,"[4] and that the preferred plan submitted by the City of Los Angeles "sets out the construction which would be most practicable and best meet the public safety, convenience and necessity in this matter."[5] The Commission found that $569,355 of the cost was attributable to the presence of the railroad tracks and that the railroad should pay 50% of this amount and the City 50%.

## No. 43.

This case does not differ materially from Case No. 22 except that here a grade crossing will be replaced by an underpass. Los Feliz Boulevard runs in a northeast-southwest direction, crossing at grade five Southern Pacific tracks approximately at the boundary of the cities of Los Angeles and Glendale. The street becomes known as Los Feliz Road in Glendale. Los Feliz is not a part of the State highway system nor is it a freeway, but, like Washington Boulevard, is an access street for adjacent properties and for other streets feeding into it in this congested area and as a through street has reached capacity. When the crossing is blocked by trains, 38 or more

---

[4] 51 Cal. P. U. C. 771, 779.
[5] *Ibid.*

vehicles may back up in each of three lanes, causing a "backlash" on San Fernando Road, 820 feet distant. The crossing now has manually-operated crossing gates, and several relatively minor accidents have occurred there during the last 25 years. The plan approved by the Commission passes the street under the railroad tracks, with two 40-foot roadways, separated by a median strip and with 5-foot sidewalks on each side. The structure when completed will be 105 feet wide. The total cost necessitated by the presence of the tracks was estimated at $1,493,200. The Commission ordered that 50% be borne by the railroad, 25% by Los Angeles County, and 12½% each by the cities of Los Angeles and Glendale. Construction of the grade separation was found by the Commission to be "in the interest of public safety, convenience and necessity . . . ." [6]

In each of these cases, the railroads introduced evidence intended to show that their share of the costs should be based on benefits received and that they would receive little or no benefit from the construction. For the most part, this evidence related to the nature of the traffic on the boulevards, the fact that the improvements are required primarily to facilitate traffic flow on the streets, the "revolution" in transportation that has occurred since the early part of this century and its effect on the reasons for constructing grade separations and on the financial position of railroads, the competition afforded railroads by motor vehicles utilizing the public streets and highways, and the effect of the proposed construction on operation of the railroads. The appellants contended that the costs should be distributed on the basis of benefits, and since the railroads would receive little or no benefits, they should be required to pay only a small part of the costs or nothing, as the case may be. The cities contended in both cases that the railroads should bear all the costs attribut-

---

[6] 51 Cal. P. U. C. 788, 795.

able to the presence of the tracks. After lengthy hearings and after considering all the evidence and the arguments advanced, the Commission decided that it was not bound to follow any particular theory in apportioning the costs but may allocate the costs in the exercise of its sound discretion.

We do not understand the appellants to contest the right of the Commission to enter the orders or the reasonableness of the estimated costs. Their principal contention is that as to them the cost of the improvements may be distributed only on the basis of benefits which will accrue to their property. In this contention, we think the appellants are in error. These were not improvements whose purpose and end result is to enhance the value of the property involved by reason of the added facilities, such as street, sewer or drainage projects, where the costs assessed must bear some relationship to the benefits received. *Chesebro v. Los Angeles County Dist.*, 306 U. S. 459; *Valley Farms Co. v. Westchester*, 261 U. S. 155; *Kansas City S. R. Co. v. Road Improvement District, supra; Gast Realty & Investment Co. v. Schneider Granite Co.*, 240 U. S. 55.

Rather, in the cases at bar, the improvements were instituted by the State or its subdivisions to meet local transportation needs and further safety and convenience, made necessary by the rapid growth of the communities. In such circumstances, this Court has consistently held that in the exercise of the police power, the cost of such improvements *may be* allocated all to the railroads. *Erie R. Co. v. Board*, 254 U. S. 394, 409–411; *Missouri Pacific R. Co. v. Omaha*, 235 U. S. 121, 127; *Chicago, M. & St. P. R. Co. v. Minneapolis*, 232 U. S. 430, 441; *Cincinnati, I. & W. R. Co. v. Connersville*, 218 U. S. 336, 344. There is the proper limitation that such allocation of costs must be fair and reasonable. *Nashville, C. & St. L. R. Co. v. Walters*, 294 U. S. 405, 415, and the cases there cited. This was the standard applied by the Commission. It

was not an arbitrary exercise of power by the Commission to refuse to allocate costs on the basis of benefits alone. The railroad tracks are in the streets not as a matter of right but by permission from the State or its subdivisions. The presence of these tracks in the streets creates the burden of constructing grade separations in the interest of public safety and convenience. Having brought about the problem, the railroads are in no position to complain because their share in the cost of alleviating it is not based solely on the special benefits accruing to them from the improvements.

The appellants rely heavily on the *Nashville* case, *supra,* but that decision is in accord with the long-established rule which we here follow and which the Commission applied. As this Court said in the *Nashville* case: "The claim of unconstitutionality rests wholly upon the special facts here shown." P. 413. In that case, the railroad's share of the cost was fixed at 50% by a Tennessee statute and no consideration was given by the Supreme Court of Tennessee as to whether the application of the statutory amount was unreasonable under the special facts advanced. The grade separation ordered in the *Nashville* case was located in the rural community of Lexington, Tennessee, which had a population in 1910 of 1,497, in 1920 of 1,792, and in 1930 of 1,823. The improvement was not required to meet the transportation needs of Lexington and was being constructed without regard to that community's growth or to considerations of public safety and convenience resulting from such growth. The highway there under improvement was part of the State highway system and the grade was to be removed primarily as part of economic and engineering planning and to qualify the improvement of the highway for federal aid. Other facts offered pointed principally to the state and nation-wide nature of the highway system and the particular highway there involved, the competition afforded railroads by the users of such highways and

the effect of such competition on the revenues of the railroads, and the increasing importance of grade separations as a means of assuring rapid movement of motor vehicles rather than as an exclusively safety measure.

As stated by this Court, "[t]he main contention is that to impose upon the Railway, under these circumstances, one-half of the cost is action so arbitrary and unreasonable as to deprive it of property without due process of law in violation of the Fourteenth Amendment." P. 413. Thus, the contention of the railroad and the rule recognized by this Court in the *Nashville* opinion was that there could be an allocation of costs subject to the limitation that they be allocated always with regard to the rule against unreasonableness and arbitrariness. The judgment of the Supreme Court of Tennessee was reversed and the case remanded thereto because that court had refused to consider whether the special facts shown "were of such persuasiveness as to have required the state court to hold that the statute and order complained of are arbitrary and unreasonable. That determination should, in the first instance, be made by the Supreme Court of the State." Pp. 432–433.

In our cases, not only are the facts distinguishable in many material particulars but unlike the Supreme Court of Tennessee which refused to consider the facts to determine whether the statute's allocation of 50% was arbitrary or unreasonable, the California Commission considered all the evidence offered, including that going to the benefits received, and properly applied the rule of allocation sanctioned by this Court, and the California Supreme Court found no occasion to review the Commission's orders. There is no showing on these records of arbitrariness or unreasonableness in the Commission's orders, and none is claimed except as the Commission refused to allocate costs on the basis of benefits received, which we hold it was not required to do.

It is next contended that the allocation of grade separation costs against the railroads in excess of benefits received constitutes an undue burden on interstate commerce. We have decided that there is no showing that the orders here under attack were arbitrary or unreasonable. Certainly, if the Commission has the right to order these improvements and has not, in allocating the costs, acted so arbitrarily as to deprive the railroads of their property without due process of law, the fact that the improvements may interfere with interstate commerce is incidental. The construction and use of public streets is a matter peculiarly of local concern and great leeway is allowed local authorities where there is no conflicting federal regulation, even though interstate commerce be subject to material interference. *Railway Express Agency* v. *New York*, 336 U. S. 106, 111; *South Carolina* v. *Barnwell Bros.*, 303 U. S. 177, 187. No conflict with federal regulation is involved here. See *Lehigh Valley R. Co.* v. *Board*, 278 U. S. 24, 35.

When the appellants went on the streets in question, they assumed the burden of sharing on a fair and reasonable basis the costs of any changes for the reason of public safety and convenience made necessary by the growth of the communities.

> "To engage in interstate commerce the railroad must get on to the land and to get on to it must comply with the conditions imposed by the State for the safety of its citizens." *Erie R. Co.* v. *Board, supra,* p. 411.

The orders of the Commission are not arbitrary or unreasonable and do not deprive the appellants of their property without due process of law, nor do they interfere unreasonably with interstate commerce.

The judgments of the Supreme Court of California are

*Affirmed.*

THE CHIEF JUSTICE took no part in the consideration or decision of these cases.