44 N.J. Super. 172 (1957)
129 A.2d 895
BOROUGH OF SAYREVILLE, A MUNICIPAL CORPORATION, CITY OF SOUTH AMBOY, A MUNICIPAL CORPORATION, COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION, AND BOARD OF PUBLIC UTILITY COMMISSIONERS, DEPARTMENT OF PUBLIC UTILITIES OF THE STATE OF NEW JERSEY, A STATE ADMINISTRATIVE AGENCY, PLAINTIFFS-RESPONDENTS,
v.
THE PENNSYLVANIA RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1957.
Decided March 8, 1957.
*174 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Stephen VR. Strong argued the cause for defendant-appellant (Messrs. Strong & Strong and Mr. Windsor S. Cousins, attorneys).
Mr. Joseph T. Karcher argued the cause for plaintiffs-respondents (Mr. John E. Mullane and Mr. Samuel V. Convery, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The question here is whether a railroad company is entitled to 85% financial assistance by the State when ordered to reconstruct a county highway bridge over its railroad tracks. The appellant makes its affirmative *175 contention on that proposition on the basis of L. 1947, c. 178, R.S. 48:12-62, 67.1, 70, 71, 77.
On November 23, 1955 plaintiffs filed a petition with the Board of Public Utility Commissioners requesting that the defendant railroad be required to construct a new fire-proof bridge to replace the existing "Deep Cut Bridge" over its right-of-way at Sayreville. The present bridge carries Washington Road, a county highway, across defendant's tracks. It was originally intended for the passage of at least two lanes of highway traffic, but the Board has found that under present-day traffic conditions the limited width of the bridge impedes public travel, buses and commercial vehicles being unable to pass one another on it. The Board therefore ordered a new and adequate bridge to be constructed by the railroad within a year from the date of the order, July 25, 1956. The present appeal raises only this issue  the correctness of the failure of the Board to assess the State for 85% of the cost of reconstruction, under the act cited. Subsidiary to the matter of construction of the 1947 act there is raised the question as to the constitutionality of existing statutes pertaining to defendant's responsibility in this matter under the assumption that the 1947 act leaves the defendant assessable for 100% of the cost without regard to whether it benefits to any extent from the work. We think a foundation for the presentation of the subsidiary point is scarcely raised in defendant's brief or in its "statement of the questions involved" therein, R.R. 1:7-1(c), but the question was orally argued and we will deal with it.
There is no question but that prior to the 1947 statute it was the obligation of every railroad company at its own cost and expense to construct and keep in repair "good and sufficient bridges and passages over, under and across" any railroad right-of-way, where any road, street or avenue might cross the railroad, "so that public travel on the road is not impeded thereby." (R.S. 48:12-49), deriving from L. 1903, c. 257. It was further provided that "said bridges and passages shall be of such width and character as shall *176 be suitable to the locality in which they are situated." An understanding of the contention of the railroad appellant in the present case requires reference to the so-called Fielder Grade Crossing Law, L. 1913, c. 57 (R.S. 48:12-61 to 67), which authorizes the Board of Public Utility Commissioners to compel a railroad company to eliminate a crossing of the tracks of the railroad with a public highway at grade. The entire cost of elimination was placed on the railroad under the original enactment. By L. 1929, c. 88, a program for elimination of railroad crossings with state highways, both at grade and not at grade, was adopted, pursuant to which the cost of the work was to be shared equally between the State and the railroad company affected. R.S. 48:12-68 to 78, as amended. In 1930 the Fielder Law, above referred to, was amended (L. 1930, c. 101) to reduce the railroad obligation for the elimination of grade crossings to 50% of cost and also to indicate that it no longer applied to state highway crossings, thereby conforming it to the plan of the 1929 statute.
Thus, as of prior to 1947, elimination of crossings at grade with other than state highways and elimination of crossings, whether or not at grade, with state highways, required the payment by the railroad affected of but 50% of the cost. But in the case of crossings not at grade affecting other than state highways the cost of compliance with R.S. 48:12-49 was borne entirely by the railroad.
Now to consider L. 1947, c. 178 and the claim of the defendant that it operates to relieve it of 85% of the cost of reconstruction of the bridge involved in the present case. The act is entitled "An Act concerning the elimination of grade and other crossings of railroad tracks and highways, amending sections 48:12-62, 48:12-70, 48:12-71, 48:12-77 and supplementing chapter twelve of Title 48 of the Revised Statutes." Section 1 of the act amends section 48:12-62 to provide that the railroad company involved shall pay 15% and the Public Utility Board, "out of funds to be provided for that purpose," 85% of the expense "of such alterations, reconstructions, changes, relocation or opening *177 * * *." (Emphasis ours) Section 2 provides that sections 48:12-61 to 48:12-66 of the Revised Statutes "shall apply to all alterations, reconstructions," etc. "ordered by the Board of Public Utility Commissioners, after the effective date of this act" and also to any "alterations, reconstructions," etc., ordered prior to such effective date if no part of the work under such order had been actually commenced on the ground prior to such date. Sections 3, 4, and 5 of the act provide for a reduction to 15% of total cost, of the railroad's share of the cost of work to be shared by railroad companies and the State Highway Commission under R.S. 48:12-70, 71 and 77 (crossings with state highways).
The argument of the railroad company is that because of the reference to "and other crossings" in the title of L. 1947, c. 178 and of the insertion of the words "all" and "reconstructions" in sections 1 and 2 of the act, verbiage not in the amended statutory sections previously, it is clearly and unambiguously indicated that the intention was that the expense allocations in the act should be applicable to all reconstructions made by a railroad company on the order of the Public Utility Commission, whether or not the crossing was at grade and whether or not the highway affected was a state highway.
The argument is quite unsound. Insofar as sections 1 and 2 of the 1947 act are concerned, they deal only with R.S. 48:12-61 to 66, inclusive. Those sections are concerned solely and exclusively with elimination of crossings at grade. In the absence of express legislative language so requiring, it would be totally unwarranted to construe an amendment or supplement to those sections as dealing with crossings not at grade. Particularly when we are dealing with a statute which it is contended operates to appropriate or commit state funds should a court be insistent upon finding clear, express and unambiguous legislative direction. It does not clearly appear why the word "reconstructions" was inserted in the 1947 amendment of R.S. 48:12-62. The plaintiffs suggest that the interpolation was intended to bring the coverage of the statute, insofar *178 as it applies to grade crossing eliminations, in line with section 1 of the 1930 amendment of the Fielder Act, which refers to "reconstructing such railroad" (see R.S. 48:12-61a). But whatever the purpose may have been, the language cannot have the effect contended for by plaintiff, for the reasons already indicated. So far as section 2 of chapter 178 is concerned, the obvious purpose is to fix the date or time controlling the applicability of the new schedule for cost participation to pending or new projects.
The railroad stresses the reference to "grade and other crossings" in the title of chapter 178 as purportedly indicative of an intent that the 1947 act should apply to work at crossings other than at grade. So it does, but the simple explanation is that chapter 178 does deal with crossings other than at grade insofar as it amends R.S. 48:12-70, 71 and 77, which all deal with crossings at state highways, and, as indicated above, those provisions have to do with crossings whether or not at grade. That is the obvious significance of the reference in the title and it does not help defendant.
It remains to consider the contention that if New Jersey's relevant statutes, properly construed, require the defendant to bear the entirety of the expense of this work, they impose an arbitrary, and therefore unconstitutional, requirement, in that little, if any, of the benefit of the ordered reconstruction accrues to the benefit of the railroad. However, the theory that a state must consider benefit to the railroad or absence thereof in determining what proportion of the expense of reconstruction at a crossing with a highway should be borne by the railroad was expressly rejected by the United States Supreme Court in Atchison, T. & S.F.R. Co. v. Public Utility Commission, 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51 (1953). True, citing its previous holding in Nashville, C. & St. L. Ry. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935), the court reiterated the rule that "such allocation of costs must be fair and reasonable" and that in such a special situation *179 as was shown in the Nashville case, even a 50-50 allocation might be unfair and unconstitutional (improvement of a state highway, rather than service of local considerations of highway safety in relation to community growth). But the court reasserted the rule that where "the improvements were instituted by the State or its subdivisions to meet local transportation needs and further safety and convenience, made necessary by the rapid growth of the communities," the entire cost of the improvement may be constitutionally imposed on the railroad (346 U.S., at page 352, 74 S.Ct., at page 96). See also New Jersey Highway Authority v. Central R. Co. of New Jersey, 21 N.J. 157, 166 (1956); Pennsylvania-Reading Seashore Lines v. Board of Public Utility Commissioners, 13 N.J. Super. 540, 549 (App. Div. 1951), affirmed 8 N.J. 85 (1951). Such considerations apply to sustain the fairness in the constitutional sense of the allocation of the entirety of the expense of the present project to defendant. The record in the present case indicates that the highway antedated the coming of the railroad many years ago. The railroad has hitherto needed to build only relatively inexpensive bridges to connect the separated segments of the highway which its coming to the area and consequent "deep cut" caused to be severed. The need for a larger bridge arises from normal local community growth and from consequent increase of type and volume of vehicular traffic across the bridge, much of it presumably local in character. The impelling factor is local safety, convenience and necessity. The railroad may not complain of total imposition of cost upon it in such circumstances in the exercise of the State's police power (346 U.S., at page 352, 74 S.Ct., at page 96).
We are asked by plaintiffs to adjudicate the continued force and effect of the date fixed by the Board for completion of this project, notwithstanding the pendency of this appeal. We think that matter is properly to be left to the judgment and discretion of the Board.
Affirmed.