Argued June 17, 1959, reversed March 9, 1960

# UNION PACIFIC RAILROAD COMPANY *v.*
## HILL, PUBLIC UTILITY COMMISSIONER

349 P. 2d 1090

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were Robert Y. Thornton, Attorney General, John R. McCullough and Robert R. Hollis, Assistant Attorneys General, all of Salem.

*Howard Roos,* Portland, argued the cause for the respondent. With him on the brief was Roy F. Shields, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, LUSK, WARNER, SLOAN, O'CONNELL and MILLARD, Justices.

SLOAN, J.

Section 763.170, ORS, permits the officials of a city or a county or five or more freeholders and taxpayers to petition the Public Utility Commissioner to order a railroad to provide certain safety precautions at grade crossings. Pursuant to this statute, Multnomah county filed a petition with the commissioner on November 10, 1955, which requested that the commissioner require the defendant Union Pacific Railroad Company to install electric signal devices at grade crossings on Arata Road and N. E. 112th Avenue in Multnomah county. The commissioner gave notice to the railroad company, held a hearing on the petition and entered an order requiring the railroad to install the signals. The order made no requirement for an apportionment of costs. Thereafter, the railroad petitioned the commissioner to order the county to share in the cost of the signals. The commissioner held that he had no statutory power to compel the county to pay

any part of the cost. The railroad then filed a complaint in the circuit court for Multnomah county seeking a review of the last mentioned order of the commissioner. The defendant commissioner and the Multnomah county commissioners demurred to the complaint, the demurrer was overruled, the defendants elected not to plead further so a decree was entered which vacated the challenged order of the commissioner. The commissioner appeals. Multnomah county has not participated in the appeal. At the time this proceeding was started, Charles H. Heltzel was the commissioner. Jonel C. Hill, the present commissioner, has been substituted for Mr. Heltzel.

The statute we are called upon to construe was originally section 28 of the act of 1907 creating the railroad commission and providing for the regulation of railroads. The section has never been amended in any material respect. It is now codified as ORS 763.170, before mentioned. As codified the statute provides:

> "Complaints on dangerous grade crossings; notice; hearing; orders. (1) Whenever a complaint is lodged with the Public Utility Commissioner by the common council or mayor of any city, or any county judge or county commissioner or county roadmaster, or by five or more freeholders and taxpayers in any town or road district to the effect that a public highway and a railroad cross one another in such city or road district at the same level, and that such grade crossing is unsafe and dangerous to travelers over such highway or railroad, the commissioner shall give notice to the railroad in interest of the filing of such complaint, and furnish a copy of the same to the railroad company, and order a hearing thereon in the manner provided for hearings in ORS 760.510.
> "(2) If upon such hearing it appears to the

satisfaction of the commissioner that the crossing complained of is unsafe and dangerous to human life, he may order and direct the railroad:

"(a) To erect gates at the crossing and place an employe in charge to open and close the same when an engine or train passes; or

"(b) To station a flagman at such crossing who shall display a flag when an engine or train is about to pass; or .

"(c) To provide such crossing with an electric signal, or other suitable device as the commissioner determines is required for better security of human life and public travel.

"(3) The railroad shall comply with the terms of such order."

The railroad does not contend that the commissioner abused his discretion when he found the grade crossings to be hazardous. Nor is it alleged that the cost of the signal devices was unreasonable.

The main argument of the railroad is that the statute must be construed to imply that the commissioner can require apportionment of costs or, if not, then the act violates rights guaranteed plaintiff by the Constitutions of the United States and of Oregon. The railroad also contends for an implied amendment to the above statute. It points to other statutes subsequently adopted which do specifically authorize the commissioner to apportion costs between the particular public authority involved and the railroad. Railroad counsel then argue that these statutes give an implied right to the commissioner to apportion costs when acting pursuant to ORS 763.170. We shall consider this last argument first.

The later statutes deal with the change or elimination of grade crossings. ORS 763.040 prohibits

either the construction of a highway across the track of any railroad company, either above or below grade, or the construction of a railroad track across a highway above or below grade, without first receiving the permission of the commissioner. The statute also permits the commissioner to prescribe the terms and conditions upon which "such crossing shall be made." ORS 763.050 designates the "circumstances" in which the commissioner may make a "Division of crossing expenses between railroad and public authority." None of the "circumstances" designated include the situation involved in this case. The provisions of present ORS 763.040 and 763.050, which authorize the commissioner to apportion costs, are the end result of several acts of the legislature beginning in 1913. It is not necessary to trace all of this legislative history. It is enough to say that all of them were enacted, of course, after the 1907 act and at no time has the legislature seen fit to permit the commissioner to apportion the costs that are involved when the provisions of ORS 763.170 are applied. We think the stronger inference to be drawn from the legislative acts is that the legislature did not intend to provide for any apportionment of the costs required by compliance with ORS 763.170.

There are other reasons for refusing to imply into ORS 763.170 any power vested in the commissioner to apportion costs. The statute authorizes the commissioner to order the railroad to erect gates and "place an employe in charge to open and close the same" or to "station a flagman at such crossing." Either of these alternatives require the duty to be performed by an employe of the railroad. Also the statute permits a petition to be filed by five freeholders and taxpayers. It is difficult to believe the legislature in-

tended petitioners, who were private citizens, to bear any part of the costs of installation or, particularly, of the continuing cost of maintenance either of a signal device or of a flagman's wages.

■ We think ORS 763.170 is a separate statute originally enacted and continued in its original form to meet a particular problem. It has not been impliedly amended by any of the subsequent acts of the legislature. Nor can we read into it any authority granted to the commissioner to require the permitted petitioners to pay part of the costs. The statute must stand or fall by the language thereof; not modified by any implied amendment or addition.

■ Does that application of the statute violate the railroad's constitutional rights? We think not.

> "* * * That is one of the most obvious cases of the police power, or to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires. It is said that if the same requirement were made for the other grade crossings of the road it would soon be bankrupt. That the State might be so foolish as to kill a goose that lays golden eggs for them, has no bearing on their constitutional rights. If it reasonably can be said that safety requires the change it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil. * * *" *Erie R. R. Co. v. Public Util. Commrs.*, 254 US 394, 410, 41 S Ct 169, 65 L Ed 322.

The reason and the rule stated above has had uniform and universal approval. *Atchison R. Co. v. Pub. Util.*

*Comm'n.,* 346 US 346, 74 S Ct 92, 98 L Ed 51 (1953);
*Nashville, C. & St. L. Ry. v. Walters,* 294 US 405, 55
S Ct 486, 79 L Ed 949 (1935); *Lehigh Valley R. R. v.
Commissioners,* 278 US 24, 49 S Ct 69, 73 L Ed 161,
62 ALR 805, (1928).

In annotations at 55 ALR 660 and 62 ALR 815 a
number of cases decided by the state courts are col-
lected. No case is cited in either annotation which
denies to the state the power to enact statutes like
that of Oregon. The Walters case, supra, is the case
most nearly supporting the position of the plaintiff
railroad in this case. And that case is readily dis-
tinguishable from the instant case on the same basis
that it was distinguished in *Atchison R. Co. v. Pub.
Util. Comm'n.,* supra.

> "Rather, in the cases at bar, the improvements
> were instituted by the State or its subdivisions to
> meet local transportation needs and further safety
> and convenience, made necessary by the rapid
> growth of the communities. In such circumstances,
> this Court has consistently held that in the exer-
> cise of the police power, the cost of such improve-
> ments may be allocated all to the railroads. [Citing
> cases]" 346 US 352.

Following the part of the opinion just quoted Justice
Minton, the author of the opinion, makes a careful
analysis of the Walters case. We find no need to
repeat what was said in that opinion.

We think this case is governed by three decisions
of the Supreme Court of Arizona. The Arizona stat-
utes on the subject of grade crossings are so similar
to ours that these cases in respect to the Arizona stat-
utes are persuasive. The first case decided by the
Arizona court was that of *Maricopa County v. Cor-
poration Commission,* 79 Ariz 307, 289 P2d 183 (1955).

The court there held that the statute involved did not authorize the commission to charge the county with any part of the cost of a signal device at a grade crossing. Thereafter the same case again reached the Supreme Court of Arizona on an appeal by the affected railroad company in *Southern Pacific Company v. Corporation Commission,* 83 Ariz 333, 321 P2d 224 (1958). In that appeal the railroad company made the same argument presented in this case. The answer of the Arizona court to this argument is worth quotation:

"The company contends that if our interpretation [the Maricopa case, supra] of section 69-228, supra, be correct, the section is unconstitutional, the theory being that the legislature cannot impose the entire cost of signalling devices upon the company for the reason that to do so would be unreasonable and especially so since the commission has found that the company and Maricopa county would benefit in equal proportions and that it was reasonable and equitable under the circumstances that each pay half the cost. The mere fact the statute imposes the entire cost upon the company does not infringe upon constitutional rights. The police power of the state may be so exercised. Erie R. Co. v. Board of Public Utility Com'rs, 254 U.S. 394, 41 S.Ct. 169, 65 L.Ed. 322; Missouri Pacific Ry. Co. v. City of Omaha, 235 U.S. 121, 35 S.Ct. 82, 59 L.Ed. 157; Atchison, T. & S. F. Ry. Co. v. Public U. Commission, 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51. Much emphasis is placed upon the proposition that since the commission found that the county received equal benefits and it is reasonable that it contribute equally to the costs, the order by reason of this finding is ipso facto unreasonable and thereby drawn into the sphere of unconstitutional law. We are not impressed with this argument *when the statute gives the commission no power to allocate a portion of the costs to*

*the county.* When because of local conditions public safety requires certain safety measures, the relative benefit to the public and the railroad company is neither a circumstance nor a factor to be considered in determining the reasonableness of the order. The reasonableness of the cost or the character of the device required is not questioned. Under such circumstances when the commission has legally found that the hazards at the crossing create the degree of danger that safety measures are required to adequately protect the health and safety of the public, it should require reasonable protective measures at the cost of the company irrespective of the relative benefit accruing to the public. The statute in effect says that under such conditions it is reasonable to require the company to pay all and the commission cannot find to the contrary. The controlling factors are local safety and necessity. We concur in the principles stated in Borough of Sayreville v. Pennsylvania R. Co., 44 N.J.Super. 172, 129 A.2d 895, pending on certification to New Jersey Supreme Court, 24 N.J. 222, 131 A.2d 586; Atchison, T. & S. F. Ry. Co. v. Public U. Commission, supra.

"The contention is made that a statute placing the entire cost on the railroad offends the commerce clause of the federal constitution. There is no merit to the contention. Erie R. Co. v. Board of Public Utility Com'rs, supra." (Emphasis supplied) 321 P2d at 227.

A later case, with the same parties but involving other grade crossings, summarily followed the cases just cited. *Southern Pacific Company v. Corporation Commission,* 84 Ariz 365, 329 P2d 883 (1958). (An attempted appeal of this case to the United States Supreme Court was dismissed "for want of a substantial federal question", 359 US 532, 1959.)

We accept and follow the decisions of the Arizona

court as decisive of the principal issue in the instant case.

■ The plaintiff railroad also contends that the rapid expansion of motor transportation compels us to construe ORS 763.170 to require apportionment of costs. It is urged that it is unfair to require the railroad to bear the full cost of safety devices when much of the benefit is for motor carriers operating in competition to the plaintiff. We recognize that the effect of the statute may now be unfair. That is an argument, however, that must be made to the legislature and not to this court.

The same argument was accepted by the court in *City of Winston-Salem v. Southern Railway Co.*, 248 NC 637, 105 SE2d 37 (1958) to invalidate a city ordinance requiring the defendant railroad to pay all of the cost of rebuilding a trestle. In that case, however, the court found that no factor of public safety was involved. We do not think the case is comparable to the instant case.

It is also urged that a prior contract between Multnomah county and plaintiff which made some provision for division of costs of the safety devices should have been binding upon the commissioner. Whatever may be the obligations of the respective parties to the contract, we cannot say. It could not be held as a rule of law that the commissioner must be bound by terms of a private contract between persons subject to the commissioner's jurisdiction. Authority cited by the railroad which permitted a regulatory body to consider such a contract is not authority for the proposition that the commissioner must apply the terms of the contract.

The decree of the circuit court must be set aside and the orders of the commissioner reinstated.