# Richmond

SOUTHERN RAILWAY COMPANY v. COMMONWEALTH OF VIRGINIA AT THE RELATION OF D. B. FUGATE, STATE HIGHWAY COMMISSIONER.

March 7, 1966.

Record No. 6074.

Present, All the Justices.

*H. Merrill Pasco (Jack Spain, Jr.; W. Graham Claytor; William H. Allen; Hunton, Williams, Gay, Powell & Gibson; Covington & Burling*, on brief), for the appellant.

*John J. Wicker, Jr. (Special Counsel)* and *Paul D. Stotts, Assistant Attorney General (Robert Y. Button, Attorney General; Wicker, Baker & Goddin*, on brief), for the Commonwealth.

*Amici Curiae: John F. Kay, Jr.; Martin P. Burks; Urchie B. Ellis; Robert E. Northup*, on brief, for Atlantic Coast Line Railroad Company; Norfolk & Western Railway Company; Richmond, Fredericksburg & Potomac Railroad Company and Seaboard Air Line Railroad Company.

EGGLESTON, C. J., delivered the opinion of the court.

Pursuant to Code, § 56-366.1 (Repl. Vol. 1959), the State Highway Commissioner filed with the State Corporation Commission a petition against the Southern Railway Company for the determination of the necessity for the construction of an overpass at a crossing of the tracks of the Railway Company and State Highway No. 617 in Fairfax county, whether the proposed plans and specifications therefor are proper and appropriate, and what proportion of the cost thereof should be borne by the Railway Company. The company filed an answer denying that it should pay any part of the cost of the project since, it said, it would derive no benefit therefrom, and calling for proof of the other allegations of the petition.

Upon consideration of the evidence submitted the majority of the Commission filed an opinion, holding "(1) that the existing grade crossing is very dangerous and is a constant hazard to the public, * * * (2) that public convenience and necessity and safety of the traveling public require its elimination, * * * (3) that a two-lane overpass would obviously be inadequate to meet the reasonable needs of the public, * * * (4) that a four-lane divided overpass as proposed by the Highway Commission is necessary and should be constructed,

and (5) that 'considering all of the facts and circumstances' involved in this matter and 'having regard to the benefits * * * accruing to the (Defendant) railroad' because of elimination of existing grade crossing," the Railway Company should pay 30% of the total estimated cost of the project, or $196,704. The Commission also found that the proposed plans and specifications for the project were "proper and appropriate."

In a dissent Commissioner Catterall agreed with the majority's interpretation of the statute (Code, § 56-366.1) but stated that, in his opinion, the Railway Company's share of the cost of the project should be limited to "its own expenses of moving the present safety devices to some other grade crossing," at an estimated cost of $45,000. From a final order recording the holding of the majority opinion the Railway Company has appealed.

In its assignments of error the Railway Company does not challenge the holding of the Commission that public convenience and necessity require the elimination of the crossing, or that the plans and specifications for the proposed project are proper and adequate. It contends that:

(1)   Under the proper interpretation of § 56-366.1 the Railway's share of the cost of the proposed grade separation project is limited to the benefits to accrue to it from the elimination of the grade crossing; that no benefits will accrue to it from such elimination, and hence it should not be assessed with any portion of the cost of the project.

(2) The apportionment to the Railway of 30% of the total cost of the proposed project is not "fair and reasonable, having regard to the benefits, if any," accruing to it.

(3) The Railway's share of the cost of the proposed grade separation structure should be based upon the cost of a two-lane structure exclusive of the cost of a large new culvert under the highway.

The grade crossing is located in Fairfax county near the unincorporated community of Springfield. State Highway No. 617, known as Back Lick Road, runs generally northwardly and southwardly. It crosses two tracks on the main line of the Railway Company and a single spur track which run eastwardly and westwardly. The crossing is used daily by more than 10,000 motor vehicles of various kinds, including private passenger vehicles, school buses and petroleum tank cars. A daily average of 36 trains pass over the crossing at speeds ranging from 25 to 60 miles per hour. At present the

crossing is protected by an automatic signal with flashing lights and bells which indicate the approach of a train, and by gates which are lowered automatically on such approach.

While the Railway Company contended that from its point of view this is not a dangerous crossing, there was evidence before the Commission that statistically it is "the second most dangerous" one in Virginia.

The State Highway Department proposes to construct a four-lane divided highway for a distance of about three-fourths of a mile to replace the existing two-lane section of Back Lick Road. The portion of the project for which the Railway Company is asked to contribute extends a distance of six-tenths of a mile and will consist of three principal features—(1) a long earth fill on each side of the railroad, (2) the bridge structure itself, and (3) a new three-barrelled concrete culvert passing under the northern approach to the overpass.

The total cost of the four-lane project is estimated at $655,680. There is evidence that a two-lane road and overpass could be constructed at the estimated cost of $507,300.

Prior to 1902 there was no provision in our statutes for the apportionment of the cost of the elimination of grade crossings between a railroad company and the State or local governmental agency. By Acts of 1902-3-4, ch. 609, subchapter IV, § 39, pp. 989, 990, it was provided that where the separation of an existing crossing is to be made at the instance of a company operating a railroad it should pay the entire cost, and when made at the instance of a county, city or town the cost should be equally borne by the railroad company and the governmental agency. Pollard's Code of 1904, § 1294(d), subsection 39. Disagreement as to the character of the work to be done was to be resolved by the State Corporation Commission. This policy was continued in the Code of 1919, § 3974, and the Code of 1950, § 56-365.

By Act of 1952, ch. 398, p. 681, the General Assembly substituted the statute with which we are here concerned and directed that it should be codified as § 56-366.1. According to the title of the Act one of its purposes is to prescribe "the procedure for avoiding or eliminating grade crossings on State highways." The pertinent portion of the statute is copied in the margin.[1]

---

[1] "Whenever a road in the State highway system or in the secondary system of State highways (1) crosses a railroad, * * * and funds are * * * allocated by the State Highway Commission for payment of the State's portion of the cost of constructing * * * an overhead * * * the State Highway Commissioner may agree with

No question has been raised as to the constitutional validity of any of the provisions of the statute. Our only concern is as to its proper interpretation and application to the situation now before us. The Railway Company contends that under the proper interpretation of the statute its proportion of the cost is limited to the "benefits, if any," which will accrue to it from the elimination of the crossing; that "the statute makes benefits the only factor in determining whether the railroad shall pay any part of the cost;" that it will derive no benefits from the elimination of the crossing and hence is not required to pay any portion of the cost.

The Commission was unanimous in the view that under the terms of the statute the amount of the contribution of the Railway Com-

the railroad company or companies, involved, on such terms and conditions as he shall deem in the best interests of the State regarding the plans and specifications, the method and manner of construction and the division of costs of any such separation of grade structure. * * *

"In the event the State Highway Commissioner and the railroad company or companies involved are unable to agree (1) on the necessity for the construction of such underpass or overpass structure or for the widening, strengthening, remodelling, relocating or replacing of any existing overhead or underpass structure, or (2) the plan and specifications for and method or manner of construction thereof, or (3) the portion of the work, if any, to be done and the share of the cost of such project, if any, to be borne by each of the railroad company or companies involved, the State Highway Commissioner shall petition the State Corporation Commission setting forth the plans and specifications for and the method and manner of construction of such project and the facts which in his opinion justify the elimination of the crossing and the erection of a new separation of grade structure or the widening, strengthening, remodelling, relocating or replacing of an existing structure. Copies of the petition and the plans and specifications shall forthwith be served by the State Corporation Commission on the railroad company or companies involved. Within twenty days after service on it of such petition and plans and specifications, the railroad company or companies shall file an answer with the State Corporation Commission setting out its objections to the proposed project and the Commission shall hear and determine the matter as other matters are heard and determined by that body. The Commission shall consider all the facts and circumstances surrounding the case and shall determine (1) whether public necessity and convenience justifies or requires the construction of such new separation of grade structure or whether an existing structure is so dangerous to or insufficient to take care of traffic on the highway as to require the widening, strengthening, remodelling, relocating or replacing proposed, (2) whether the plans and specifications or method and manner of construction are proper and appropriate, and (3) what portion of the work, if any, to be done and what share of the cost of such project, if any, to be borne by each of the railroad company or companies involved (excluding the cost of right of way) is fair and reasonable, having regard to the benefits, if any, accruing to such railroad or railroads from the elimination of such grade crossing or the widening, strengthening, remodelling, relocating or replacing any existing overhead or underpass structure, and either dismiss the proceeding as against the railroad company or companies involved or enter an order deciding and disposing of all of the matters hereinbefore submitted to its jurisdiction."

pany should not be so limited.[2] We agree with this interpretation of the statute. As the Commission points out in its opinion, if the General Assembly had intended to limit a railroad company's share of the contribution to the benefits accruing to it from the elimination of a crossing it would have said so by clear words of limitation, such as "not exceeding" or "not more than" or "not in excess of" such benefits; that since such restrictive language is not written in the statute it may not be added under the guise of interpretation.

The statute directs the Commission to "consider all the facts and circumstances surrounding the case and * * * determine * * * what portion of the work, if any, to be done and what share of the cost of such project, if any, to be borne by each of the railroad company or companies involved * * * is fair and reasonable, having regard to the benefits, if any, accruing to such railroad or railroads from the elimination of such grade crossing * * *." The phrase "having regard to the benefits, if any, accruing to such railroad" does not mean, as the Railway Company contends, that its share of the cost should be limited to such benefits. It is a direction that the Commission should consider such benefits, if any, among the facts and circumstances in determining the railroad's "fair and reasonable" share of the cost.

This view is in accord with the general rule that the fact that a railroad company will not receive any benefit from the elimination of a grade crossing does not preclude its being charged with a proper part of the cost. 74 C. J. S., Railroads, § 165a, p. 634; *State ex rel. Alton R. R. Co.* v. *Public Service Comm.*, 334 Mo. 995, 70 S. W. 2d 57, 60.

The Railway Company next contends that even under the Commission's interpretation of the statute—that the Railway Company's share of the cost of the project is not limited to the benefits which would accrue to it from the elimination of the crossing—its holding that the Railway Company should pay 30% of the total cost of the project, or $196,704, is not "fair and reasonable" and is not supported by the evidence.

As has been said, the evidence shows that daily more than 10,000 motor vehicles of various kinds use the crossing, that an average of 36 trains pass over it, and that statistically it is "the second most dangerous" crossing in Virginia. We agree with the Commission's

[2] As has been indicated, Commissioner Catterall dissented only as to the amount which the Railway Company should be required to pay.

finding that the elimination of this dangerous crossing and the elimination of possible legal liability for collision with motor vehicles there "would be of such benefit to defendant's railroad as to justify assessing it with a substantial share of the total cost of this necessary project."

It is a matter of common knowledge, fortified by frequent court decisions, that the elimination of legal liability for collisions at a grade crossing is of real benefit to the railway company there concerned. As was aptly said in *Chicago, Rock Island & Pacific Ry. Co.* v. *Public Service Comm.*, 315 Mo. 1108, 287 S. W. 617, 619, "Every one knows that grade crossings of railroads are dangerous and that fatal accidents do occur at such places. People driving over such crossings and train men operating locomotive engines are not always attentive. The construction of the viaduct at the crossing in question will eliminate all such risks and hazards. * * * It is idle to say the appellant will derive no benefit from the construction of the viaduct." See also, *Erie R. R. Co.* v. *Board of Public Utility Commissioners*, 254 U. S. 394, 412, 41 S. Ct. 169, 65 L. ed. 322.

In the present case other substantial benefits accruing to the Railway Company from the construction of the project will include the elimination of the cost of maintaining the roadway over the crossing and the present signals and gates, at a cost of approximately $800 per year.

Moreover, aside from the benefits to be derived by the Railway Company from the elimination of the crossing, it is quite logical that it should pay a substantial portion of the cost of the project. This is so because the presence of the railroad tracks across this heavily traveled highway makes the elimination necessary. The evidence on behalf of the State Highway Commissioner shows that were it not for the presence of the railroad tracks across the public highway the Highway Department could transform the present two-lane highway into a modern four-lane divided highway, with all necessary approaches, fills and culverts, at an estimated cost of only $185,000 rather than $655,680, the estimated cost of the proposed project. From this evidence the Commission found that over 70% of the total estimated cost of the project is directly and solely attributable to the presence of the railroad tracks across the highway.

The presence of the railroad tracks at a highway crossing has frequently been declared to be a factor in determining what share of the cost of such an improvement should be borne by the railroad

company. *Atchison, T. & S. F. Ry. Co.* v. *Public Utilities Comm.*, 346 U. S. 346, 350, 74 S. Ct. 92, 95, 98 L. ed. 51; *State ex rel. Alton R. R. Co.* v. *Public Service Comm., supra,* 334 Mo. 995, 70 S. W. 2d 57, 60; *State ex rel. Wabash R. R. Co.* v. *Public Service Comm.* (Mo.), 273 S. W. 2d 334, 339.

Under § 156(f) of our Constitution, "the action of the [State Corporation] commission appealed from shall be regarded as prima facie just, reasonable and correct." In considering this provision we have repeatedly said that the finding of the Commission cannot be disturbed unless the evidence clearly shows that it was unwarranted. 15 Mich. Jur., Public Service, etc., § 33, p. 177. We will not override the Commission's findings of fact where there is evidence upon which to base them. *Lynchburg Traffic Bureau* v. *Commonwealth,* 189 Va. 612, 621, 622, 54 S. E. 2d 66, 71.

We cannot say that based upon the evidence before it the finding of the Commission that the Railway Company should bear 30% of the total cost of this elimination project is unwarranted. On the contrary, we think it fully supports the finding that such apportionment "is fair and reasonable, having regard to the benefits, if any, accruing to such railroad," as required by the terms of the statute.

■ The Railway Company further contends that the apportionment of the cost of the project should be based on the cost of a two-lane structure, which the Commission found would be about $148,500 less than the estimated cost of the proposed four-lane structure. To support this contention the Railway Company offered evidence tending to show that the proposed four-lane structure would result in no more benefit to it than a two-lane crossing. Consequently it argues that its share of the apportionment should be based on the less expensive structure.

In essence this is a repetition of the argument, which we have rejected, that the Railway Company's share of the cost of the project should be limited to the benefits it will derive therefrom. We reject that argument here for the reason that the relative benefits to be derived by the Railway Company from the two types of construction are not the sole determinative factor. The public convenience and necessity are also factors to be considered.

While there are at present two lanes of travel across the railroad tracks, there are four lanes leading to the crossing on each side. To limit the proposed crossing to two lanes would narrow the crossing

and perpetuate a bottleneck on this busy highway. There is evidence from the local civil engineer that "anything less than a four-lane divided bridge with a four-lane approach" would be "absolutely" inadvisable. In this situation we cannot say that the majority of the Commission was unwarranted in its finding "that a two-lane overpass would obviously be inadequate to meet the reasonable needs of the public, and * * * that a four-lane divided overpass as proposed by the Highway Commission is necessary and should be constructed."

The plans for the proposed project call for the replacement of an existing culvert under the highway by a larger one passing under the northern approach to the overpass. The Commission held that since the need for the larger culvert was occasioned by the proposed overpass and its approaches, the cost thereof should be included in the total cost to be apportioned between the State Highway Department and the Railway Company.

The Railway Company contends that no part of the estimated cost of this item, amounting to about $135,000, should be borne by it. It argues that we are here concerned with the replacement of an existing worn-out facility installed by the Highway Department which should bear the whole cost of such replacement. But the evidence on behalf of the Highway Commissioner shows that this is not merely a replacement of an existing worn-out facility. It shows that a new and larger culvert will be necessary to carry off the added flow of water which will result from the construction of the project. Moreover, it shows that this larger facility will benefit the Railway Company in that it will prevent the flooding of its tracks. Such evidence supports the finding of the Commission that the cost of this item should be included in the total estimated cost of the project to be apportioned between the Railway Company and the Highway Commissioner.

On the whole we find no error in the order of the Commission, and it is

*Affirmed.*