[Civ. No. 28717. First Dist., Div. Four. June 24, 1971.]

DOUGLAS H. FREEMAN et al., Plaintiffs and Appellants, v. CONTRA COSTA COUNTY WATER DISTRICT, Defendant and Respondent.

406

**COUNSEL**

James H. Disney for Plaintiffs and Appellants.

Bold & Polisner and Jeffrey D. Polisner for Defendant and Respondent.

Evelle J. Younger, Attorney General, Sanford N. Gruskin, Assistant Attorney General, Roderick Walston and Charlton G. Holland, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—Appellants are the owners of residences in the City of Concord served by the water system of respondent Contra Costa County Water District. Each of the appellants maintains on his property a well from which water is drawn for such purposes as gardening and car-washing. Although appellants had not connected their well water systems to the pipes of the district's public system, the district threatens to terminate service until the affected householders agree to have installed, at their own expense, a "double check valve assembly," designed to prevent water from the auxiliary supply from "backing up" into and contaminating the public water supply. Appellants sought from the court protection against the district's threat; judgment was for the district, and the present appeal followed. We affirm the judgment.

The record shows without contradiction that contamination of a water system can occur if there is a physical connection between the public system and auxiliary water supply, such as where the two systems are connected by pipes, or where the auxiliary water is "impounded" (e.g., in a swimming pool or fish pond) and an ordinary garden hose from the public water supply is allowed to lie in water from the auxiliary system. In the latter situation a temporary loss of pressure can result in contaminated water being drawn into the public system.

Protection against this risk can be provided by installing in the consumer's water meter box a device which prevents a backward flow of water. The directors of respondent district have established an installation charge of $35, and a $.25 per month maintenance charge, for such devices, based on the cost thereof to the district. Appellants receive no special benefit from the device other than that which they receive as members of the general public.

It will be useful to outline the statutory framework under which respondent is requiring the installation of the back flow prevention device. Health and Safety Code section 203 provides that the State Department of Public Health "shall examine and may prevent the pollution of sources of public domestic water . . . supply." The department may "adopt and enforce rules and regulations" for this purpose. (Health & Saf. Code, § 208.) Pursuant to these statutes, the department adopted administrative regulations designed to prevent contamination or pollution of any public water supply as a result of "actual *or* potential cross-connections" with auxiliary water supplies. (Cal.Admin.Code, tit. 17, § 7583, italics added.) An auxiliary water supply is defined as "any water supply on or available to the premises other than the public water supply." (Cal.Admin.Code, tit.

17, § 7590.) A protective device is required to be installed on any premises receiving water from the public water system and containing an auxiliary water supply, regardless of whether the auxiliary water supply is connected to the public water system. (Cal.Admin.Code, tit. 17, § 7603.) The regulations specify various types of protective devices, depending on the "degree of hazard" involved; where the auxiliary and public water supplies are not connected, the protective device required is a "double check valve assembly," which is what respondent desires appellants to install. (Cal. Admin.Code, tit. 17, § 7604, subd. 1.) Responsibility for installing the protective device is placed on the water user. (Cal.Admin.Code, tit. 17, § 7603.) Pursuant to the foregoing state regulations, respondent adopted its own regulations providing for discontinuance of water service to any consumer who failed to install the required device.

■ Appellants contend that the requirement that they install a protective device constitutes a taking of property which must be compensated. They argue that they have the right to take water from their wells and that respondent's demand infringes on their right to use their property as they wish. This contention confuses an exercise of the police power with an exercise of the power of eminent domain; "the constitutional guarantee of just compensation attached to an exercise of the power of eminent domain does not extend to the state's exercise of its police power, and damage resulting from a proper exercise of the police power is simply *damnum absque injuria*" (*Lees* v. *Bay Area Air, etc. Control Dist.* (1965) 238 Cal.App.2d 850, 856 [48 Cal.Rptr. 295]; see also *Goldblatt* v. *Town of Hempstead* (1962) 369 U.S. 590, 593 [8 L.Ed.2d 130, 133, 82 S.Ct. 987]; *Beverly Oil Co.* v. *City of Los Angeles* (1953) 40 Cal.2d 552, 557 [254 P.2d 865]). ■ A governmental regulation will be upheld as a valid exercise of the police power if it is reasonably necessary to "protect the order, safety, health, morals and general welfare of society." (*Lees* v. *Bay Area Air, etc. Control Dist., supra,* at p. 857, citing *In re Rameriz* (1924) 193 Cal. 633, 649, 650 [226 P. 914, 34 A.L.R. 51].) ■ A regulation is presumed to be valid; therefore, appellants have the burden of proving unreasonableness. (*Goldblatt* v. *Town of Hempstead, supra,* at p. 596 [8 L.Ed.2d at p. 135].) ■ It cannot be denied that prevention of water pollution is a legitimate governmental objective, in furtherance of which the police power may be exercised. ■ Appellants argue, however, that it is unreasonable to require them to install a protective device when their water well is not connected to the domestic water supply. Therefore, it is argued, there is no possibility of contamination and the danger that respondent seeks to protect is "imagined and speculative." But the state need not wait until the public safety has actually suffered injury; it may take reasonable steps to protect a public water supply from potential cross-

connections that may create a substantial hazard of contamination. Otherwise respondent, or the Department of Public Health, would have the burdensome job of continuous inspection of all premises which possessed auxiliary water supplies to insure that no cross-connections had been made, accidently or otherwise. It is not unreasonable or oppressive to require appellants to install a $35 device to protect against a potential danger of water contamination.

 Appellants also argue that it is unreasonable to require them to pay for the cost of installation and maintenance as their property receives no special benefit from the prevention device. It is argued that, since the device is for the benefit of the public, the public should pay for it. A similar contention was made in *Atchison, Topeka & S. F. R. Co.* v. *Public Util. Com.* (1953) 346 U.S. 346 [98 L.Ed. 51, 74 S.Ct. 92]. In that case the California Public Utilities Commission had ordered improvement of railroad underpasses to promote public safety and had assessed half the cost of the improvements to the railroads. The railroads argued that, since they would receive little or no benefit from the construction, the allocation of costs constituted a taking of their property without due process of law. In rejecting this contention, the United States Supreme Court stated, "The railroad tracks are in the streets not as a matter of right but by permission from the State or its subdivisions. The presence of these tracks in the streets creates the burden of constructing grade separations in the interest of public safety and convenience. Having brought about the problem, the railroads are in no position to complain because their share in the cost of alleviating it is not based solely on the special benefits accruing to them from the improvements." (346 U.S. at p. 353 [98 L.Ed. at p. 60].) Similarly appellants, by maintaining water wells on their premises, have created the potential hazard which requires special measures of protection; they have no reasonable grounds for complaint at being required to pay the cost of such protection. Appellants are not being forced to subscribe to respondent's water service; they have the option of relying solely on their water well for their water needs. While they are entitled to use both the public water supply and their own water well, they have no right to do so in a manner which may endanger the public water supply.

 Appellants next contend that the term "auxiliary water supply" used in the regulation is unconstitutionally vague, as it leaves the determination of what constitutes an auxiliary water supply to respondent's unfettered discretion. Title 17, section 7590, of the California Administrative Code defines "auxiliary water supply" as "any water supply on or available to the premises other than the public water supply." This definition is not so vague and ambiguous as to be unenforceable.

■ Appellants argue that the district is without statutory authority to charge them for installation and maintenance of the protective device, as the County Water District Law (Wat. Code, § 30000 et seq.) provides the sole means by which respondent may finance public improvements. Respondent has not attempted to raise funds for installation of protective devices by any of the methods specified in the County Water District Act. (See Wat. Code, §§ 31501, 31502, 31503.) But section 31024 authorizes a water district to "establish rules and regulations for the sale, distribution, and use of water . . ." The protective device is not a public improvement but a condition for appellants' use of the public water supply, a condition which respondent is authorized to impose under section 31024. Moreover, Water Code section 30060 provides that the County Water District Law shall not "be so construed as repealing or in anywise modifying any other law relating to water or the supply of water . . . ." The Department of Public Health regulations, authorized under Health and Safety Code sections 203 and 208, require that responsibility for installing the protective device be placed on the water user. Therefore the statutes do authorize respondent to require appellants to pay for the cost of installing and inspecting the protective device.

■ Appellants contend that due process entitled them to notice and a hearing before respondent could demand that they either install the device or have their water service discontinued. But respondent was merely enforcing a lawful state regulation in making the demand. State law requires that before the regulations could be adopted there must be notice and a hearing at which any interested person could appear to oppose the proposed regulations. (Gov. Code, § 11420 et seq.) There is no requirement that a new notice and hearing be given in each individual case before an agency can enforce a valid statute or regulation.

The judgment is affirmed.

Devine, P. J.; and Rattigan, J., concurred.