The above-entitled actions were consolidated for trial and tried at February Term, 1934, of the Superior Court of Franklin County.
The Louisburg Grocery Company is a corporation, organized under the laws of the State of North Carolina, with its principal office and place of business at Louisburg, in Franklin County, N.C. Prior to the appointment of W.H. Allen as its receiver in 1932, the said corporation was engaged in the wholesale grocery business, dealing principally in flour, which it sold and distributed to retail merchants doing business in Franklin, Warren, Vance, Nash, and Wake counties.
The Bowersock Mills and Power Company is a corporation, organized under the laws of the State of Kansas, with its principal office and place of business at Lawrence, in said state. During the year 1928 the said corporation was and it is now engaged in the business of manufacturing and selling flour.
The action entitled "Louisburg Grocery Company v. Bowersock Mills and Power Company" was begun in the Superior Court of Franklin County on 13 December, 1932. In the complaint in said action it is alleged: *Page 341 
"4. That during the year 1928 the plaintiff and the defendant entered into a contract whereby the defendant contracted and agreed that it would constitute the plaintiff its sole agent for the sale of its flour in the territory above set forth (to wit, Franklin, Warren, Vance, Nash, and Wake counties, North Carolina), and that it would not sell or permit anyone else to sell by its authority its flour to any other dealer within said territory, but that the plaintiff should be its sole and exclusive agent. Said defendant further contracted and agreed that it would furnish to the plaintiff all of its several grades and brands of flour, and in such proportions as the plaintiff might order out the same.
"5. That after the making of the contract above set forth, and in consequence of the same, and in reliance upon the good faith of the defendant, this plaintiff proceeded at once to thoroughly advertise the flour of the defendant throughout the counties above mentioned; that said advertising was done through the newspapers, by the distribution of printed handbills, by letters, postal cards and other advertising matter sent through the mails, as well as by personal solicitations; that plaintiff had great confidence in the merits of flour manufactured from hard wheat and its suitability for the making of bread; and in order to better advertise said flour and further the sale thereof, the plaintiff gave public demonstrations of its suitability for that purpose and carried and exhibited samples of bread made from it; that said advertising campaign was carried on at great pains and expense to the plaintiff, and resulted in the creation of a very large demand for said flour in this section, whereas prior to that which the plaintiff did to advertise said flour, it was practically unknown here.
"6. That after the plaintiff, at great pains and expense, had widely and extensively advertised the flour of defendant and created a demand for it, the said defendant failed and refused to abide by and perform its contract with the plaintiff, whereby the defendant had agreed to give the plaintiff the exclusive right to sell defendant's flour in this territory; that in violation of its contract and agreement, and of the rights of this plaintiff, it sold its flour under various brands to other wholesalers and jobbers within plaintiff's territory; that not only did said defendant breach its contract with plaintiff by selling to other wholesalers and jobbers in plaintiff's territory, but it also failed and refused to ship to the plaintiff the grades and brands of flour which were ordered by the plaintiff, endeavoring to compel plaintiff to use only the highest grade of flour. That the plaintiff suffered much loss on this account by reason of the fact that during the period of financial depression which has overtaken the nation there is a much greater demand for the cheaper grades of flour than there is for the higher-priced grades.
"7. That by reason of the defendant's breach of contract as hereinbefore set forth, plaintiff lost the sale of large quantities of flour and the *Page 342 
profits therefrom; that plaintiff did not realize the benefits to which it was entitled from the extensive and expensive advertising campaign which it carried on in behalf of defendant's flour; and plaintiff has in many and various ways suffered inconveniences and loss — all to the damage of the plaintiff in the sum of $3,000."
These allegations of the complaint are denied in the answer filed by the defendant.
The action entitled "Bowersock Mills and Power Company v. W.H. Allen, Receiver of Louisburg Grocery Company and McM. Ferguson" was begun in the Superior Court of Franklin County on 28 June, 1933. In the complaint in said action it is alleged:
"3. That on or about 5 November, 1932, the plaintiff, at the request of the defendant Louisburg Grocery Company, sold and delivered to the said Louisburg Grocery Company at Louisburg, N.C. a shipment of flour, aggregating 210 barrels, for the net sum of $604.69, a copy of invoice of said shipment being hereto attached, marked `Exhibit A,' and made a part of this complaint.
"4. That at the time of the shipment of said flour, to wit, 5 November, 1932, the plaintiff forwarded, through the regular banking channels, an acceptance draft in the sum of $604.69, covering the said shipment of flour, which draft was duly presented to the Louisburg Grocery Company, through the First Citizens Bank and Trust Company, Franklinton, N.C. and was accepted by McM. Ferguson for the Louisburg Grocery Company as of 14 December, 1932, the said draft to be paid thirty days after the arrival of the car containing said shipment of flour."
It is further alleged in said complaint that prior to the shipment of said flour, the defendant McM. Ferguson, the president of the Louisburg Grocery Company, had in writing personally guaranteed the payment of said draft, and that although more than thirty days had elapsed since the arrival of the car containing the said shipment of flour, the said draft has not been paid by the defendants or either of them.
In their answer the defendants admit the allegations of the complaint. They plead, however, in defense of plaintiff's recovery in said action, damages for the breach of the contract between the plaintiff and the Louisburg Grocery Company, as alleged in the action entitled "Louisburg Grocery Company v. Bowersock Mills and Power Company."
At the trial the issues submitted to the jury were answered as follows:
"1. Was there an agreement between the Louisburg Grocery Company and the defendant Bowersock Mills and Power Company that the said grocery company was to act as the sole and exclusive agent of the defendant for the sale of flour in the territory and towns and under the terms and conditions as alleged in the complaint? Answer: `No.' *Page 343 
"2. If so, did the said defendant breach said contract and agreement, as alleged in the complaint? Answer: . . .
"3. If so, in what amount has the plaintiff been damaged by reason of said breach of contract? Answer: . . .
"4. What amount is the plaintiff Bowersock Mills and Power Company entitled to recover of the defendants Louisburg Grocery Company and McM. Ferguson? Answer: `$604.69, with interest from date of acceptance of the draft.'"
From judgment that the Louisburg Grocery Company recover nothing of the Bowersock Mills and Power Company, and that said Bowersock Mills and Power Company recover of W.H. Allen, receiver of the Louisburg Grocery Company, and McM. Ferguson the sum of $604.69, with interest from 14 December, 1932, and the costs of the action, the Louisburg Grocery Company, W.H. Allen, receiver, and McM. Ferguson appealed to the Supreme Court.
At the trial of this action there was evidence tending to show that J. B. Kittrell, of Greenville, N.C. was during the year 1928 and is now the agent of the Bowersock Mills and Power Company in and for the State of North Carolina, and that as such agent he was authorized to make and enter into the contract with the Louisburg Grocery Company on behalf of the Bowersock Mills and Power Company, as alleged in the complaint in the action entitled "Louisburg Grocery Company v. Bowersock Mills and Power Company."
As a witness for the Bowersock Mills and Power Company, J. B. Kittrell testified as follows:
"I live in Greenville, Pitt County, North Carolina. In 1928 I represented the Bowersock Mills and Power Company as its flour salesman. My territory was and is now the State of North Carolina. I was authorized to contact prospective customers, on a specific contract on which I was paid commissions. I had the whole State of North Carolina, and was the sole representative of the company in this State. I reported all contracts to the company for its approval. When we entered into a contract with a prospective customer we came to a common understanding as to a division of territory."
There was also evidence tending to show that some time during the year 1928, or 1929, J. B. Kittrell, as agent of the Bowersock Mills and Power Company, made and entered into the contract with the Louisburg Grocery Company, as alleged in the complaint, and that the Bowersock Mills and Power Company thereafter ratified the said contract. *Page 344 
McM. Ferguson, as a witness for the Louisburg Grocery Company, testified as follows:
"From 1925 to 1933 I was the president of the Louisburg Grocery Company. On 8 December, 1925, I received a letter from the Bowersock Mills and Power Company advising me that the said company had sent me a sample of the flour which it was manufacturing, and soliciting business with me. In this letter I was advised that Messrs. Kittrell and Parrish were the company's brokers, and was requested to favor them with a trial order for a carload of flour.
"I made the contract on which we are suing with Mr. Kittrell during 1928 or 1929. He agreed to give me exclusive right to sell flour manufactured by the company in Franklin County, and also in the following towns: Oxford, Henderson, Warrenton, Nashville, Spring Hope, Zebulon, and Wake Forest. It was agreed that my contract should cover all brands of flour manufactured by the company, and that the company should not sell such flour to jobbers who sold flour in my territory. In consequence of the agreement, I agreed to take the agency of the Bowersock Mills and Power Company in the territory agreed upon, and to give up the contract that I had with another mill. I knew I would have a hard time to establish the trade in this part of the country. I went to work and advertised the flour manufactured by the company at my own expense. I paid out for newspaper advertising during the years 1928, 1929, and 1930, $548.75."
In view of this evidence it was error for the court to instruct the jury that if they believed all the evidence they should answer the first issue "No," and in that event should not consider the second and third issues.
For the error in such instruction the appellants are entitled to a new trial. It is so ordered.
New trial.