**CITY OF SHIVELY, Kentucky, Appellant,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.**

Court of Appeals of Kentucky.

May 12, 1961.

Rehearing Denied Oct. 20, 1961.

Raymond C. Stephenson, Louisville, for appellant.

S. Lloyd Cardwell, James W. Stites, Stites, Wood, Helm & Peabody, Louisville, for appellee.

STEWART, Judge.

In this action appellee, Illinois Central Railroad Company, sought in circuit court to prohibit the enforcement of an ordinance of appellant, city of Shively, a fourth-class city, which required appellee to erect and maintain safety gates for traffic at three crossings of the railroad over Wathen's Lane, Sanders (sometimes called Sadie) Lane, and Gagel Avenue, all of which crossings are located within appellant's city limits. The ordinance went into effect immediately upon passage, leaving no grace period; contained penalties of $10 to $50 per day for noncompliance; and made no provision for financial contribution by the appellant city. The ordinance was drafted in conformity with the terms and conditions of KRS 96.070, which is set forth in its entirety hereinafter.

A temporary injunction, issued pending trial, was sustained by the Court of Appeals. Trial was held in June, 1958, and on July 8, 1958, the judgment entered decreed the ordinance was void and appellant and its officers and agents were permanently enjoined from carrying the ordinance into effect.

The opinion of the trial court stated that "the volume of 'suburban' (not necessarily Shively) traffic taken together with · the number of trains was sufficient to require crossing gates for the safety of the substantial vehicular traffic on the cross roads." However, the lower court concluded that, in the light of the trend of recent legislation and recent cases, particularly those of the Supreme Court of the United States, and because conditions have radically changed in the use of highways and railroads by the general public, KRS 96.070 as interpreted in Chesapeake & Ohio Ry. Co. v. Maysville, Ky., 1902, 69 S.W. 728, should not be enforced to the letter, for to do so would "unconstitutionally deprive the railroad of its property without due process of law, constitute a direct and confiscatory burden on interstate commerce, and deny it the equal protection of the law."

Appellant relies upon KRS 96.070 to uphold the validity of the ordinance, which statute reads as follows:

"The legislative body of any city of the fourth class may grant right of ways over the public streets or public grounds of the city to any utility company, on such conditions as seem proper, (and) shall have a supervising control over the use of same, and shall regulate the speed of cars and signals and fare on street cars. The legislative body may compel any railroad company to erect and maintain gates at street crossings * * * of the city, and fix penalties for the violation of these provisions. Nothing in this section shall prevent any property owner

whose property abuts on a street on which a railroad is granted a right of way from recovering from the railroad any damage done to his property by the occupation or use of the street by the railroad."

In Chesapeake & Ohio Ry. Co. v. Maysville, cited above, an ordinance was considered and upheld that was identical for all practical purposes with the one in question. Under that ordinance Maysville, a fourth-class city, required the railroad involved in that case to construct, maintain and operate safety gates at four streets which crossed over the railroad. When the ordinance was attacked on the ground that the city had no authority to enforce it, this Court, in an opinion handed down by it, said: "Subsection 25 of section 3490 of the Kentucky Statutes (now KRS 96.070) which is a provision of the charter of cities of the fourth class, to which appellee belongs, expressly provides that the board of council may compel any railroad to erect and maintain gates at any and all street crossings. It is clear that under this provision of the charter the city council were authorized to adopt the ordinance complained of."

Under the undisputed factual situation presented, we believe there can be no doubt but that the ordinance under consideration was enacted pursuant to the police power of the city of Shively as delegated to it by the Legislature under KRS 96.070. Furthermore, this same type of ordinance adopted by a city of the same class in conformity with the statute was construed and upheld by this Court in the case of Chesapeake & O. Ry. Company v. City of Maysville, 69 S.W. 728. We have found no decision, and appellee has produced none, which would authorize this Court to hold that KRS 96.070 does not empower the city of Shively to adopt the ordinance and enforce it in accordance with its terms and conditions.

Appellee, however, advances two arguments why, under present conditions, it should not be compelled, at its sole expense, to erect and maintain the safety gates. It points out that the original enactment upon which the ordinance is based first made its appearance in our statutes in 1893, back in the horse-and-buggy days. It was not unreasonable before the advent of the automobile and the motor truck to assume that a railroad could pass the costs on, through its rate structure, to the very people who were to a great extent benefited by a crossing improvement. However, under the ordinary competitive conditions now prevailing between all railroads and other modes of transportation, the costs of crossing improvements may not be absorbed into the rate structure and passed on effectively to the shipping public as in former times. Therefore, the plight of the railroads in these times, when their income is steadily diminishing, has become such that fairness and justice dictate that the outlay for crossing improvements should be shared by the unit of government which directly profits from the advantage received.

The other contention is that the trend in the law, state and federal, has been away from casting the whole financial burden upon the railroads of constructing projects designed to eliminate the hazards connected with railroad-highway crossings. By reference to certain statutes and the cases upholding the validity of such legislation, which statutes provide for the elimination of railroad grade crossings at costs to be borne by the railroad and the governmental unit or units involved according to a certain ratio, appellee takes the position that the city should be compelled to make a reasonable contribution to the cost of installing and maintaining the safety gates. Appellee also insists there is nothing in KRS 96.070 which would imply that a city may throw the whole expense of erecting and operating the safety gates onto appellee.

■ It is our view appellee's first contention is completely answered by certain principles laid down in the Maysville case, cited above. The railroad in that case

condemned the ordinance on the ground that it was arbitrary and oppressive and therefore an illegal and unconstitutional exercise of the police power. The Maysville opinion had this to say on these and related points:

" * * * The ordinance complained of was passed pursuant to express legislative authority, and, as was said in Hall v. Com., 101 Ky. [382] 385, 41 S.W. 2: 'It is a well-settled rule that an ordinance cannot be assailed as invalid merely because it may be considered as unreasonable, or as working a hardship in particular cases. In other words, what the legislature expressly authorized cannot be set aside by the courts because they deem it unreasonable.' In the case of Com. v. Fowler, 96 Ky. 179, 28 S.W. [786] 789, 33 L.R.A. 839, in sustaining the validity of a statute passed in the exercise of a police power, this court said: 'We cannot hold this or any law invalid for the reason simply that it violates our opinion of justice, or is oppressive, or, in our opinion, is not required or authorized by public necessity. The remedy for unwise or unjust legislation is not to be provided by the judiciary.' * * *."

■ This is not a grade-crossing elimination case, so that the statutes and the cases which deal with controversies arising out of the question of what the railroad or the governmental unit is to pay when hazards at railroad-highway crossings are removed by means of grade separation structures being built, have no application to the case at bar. As suggested by appellee, KRS 96.070 is silent in respect to whose liability it is, the city's or the railroad's, to meet the expense when safety gates are installed and placed in operation. However, since the statute recites that the city "may compel any railroad company to erect and maintain gates at street crossings," the implication is crystal clear that the railroad must assume the entire payment.

■ The lower court, upon the basis of the facts presented in this case, set forth a conclusion of law that was clearly erroneous when it held that the literal enforcement of the ordinance would "unconstitutionally deprive the railroad of its property without due process of law, constitute a direct and confiscatory burden on interstate commerce, and deny it the equal protection of the law."

The Supreme Court of the United States has definitely ruled that compelling a railroad to install safety gates does not have the consequences the lower court envisioned. In Chicago B. & Q. Ry. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 592, 41 L.Ed. 979, it was held in effect that the expense required of a railroad in the erection of gates, and in the taking of other precautionary measures, in order that safety may be maintained in the use of a road crossing, could reasonably be considered an outlay of money the railroad must be deemed to have taken into account when it accepted "the privileges and franchises granted by the state." A pertinent statement on this same point is expressed in these words in the Chicago, B. & Q. Ry. Co. case: "Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest."

■ As a general proposition a valid exercise of the police power resulting in expense or loss of property is not a taking of property without due process of law or without just compensation, nor does it abridge the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. See McQuillin, Municipal Corporations (3d ed.), Vol. 6, secs. 24.05, 24.06.

■ Appellee further contends that the right of the railroad to cross a highway or street arises from the paramount legislative grant contained in KRS 277.060(1) (h),

which recites that a railroad may: "Construct its road upon or across any private road, highway, street, lane or alley; and across any railroad, canal or watercourse." Appellee reasons that once this right is exercised, and the city in giving a right-of-way easement reserved no authority in its agreement with the railroad to regulate and control the tracks, the city may not thereafter by ordinance compel the railroad (we quote the exact phrase employed in the brief of appellee's counsel) "to do something on property *it already owns*."

This theory (and it is nothing more than that) flies in the face of KRS 96.070, which provides that a city like Shively in granting a right of way over a public street to a railroad, on such conditions as it deems proper, " * * * shall have a supervising control over the use of same * * *." A case appellee relies upon to sustain its position on this point in our opinion refutes it. We refer to the case of City of Versailles v. Kentucky Highland R. R. Co., 153 Ky. 83, 154 S.W. 388. In the opinion of that case 154 S.W. at page 390, this language appears: "Although such parts of appellee's railroad as are affected by the ordinance are situated upon its own ground or properly acquired right of way, as such right of way is within the corporate limits of the city, we think the city council would have the power to pass an ordinance requiring it to construct railings at the sides of its cuts, contiguous to streets or open ways of the city, if deemed reasonably necessary for the safety of its inhabitants or stock owned by them." Versailles was a fourth-class city at the time the above case was decided.

■ The ordinance assesses a penalty for its violation, and it is asserted this feature is invalid. Such is allowable within the purview of the statute. Appellee infers that the levying of a fine of not in excess of $50 (the maximum amount) for each day the railroad refuses to comply with the ordinance might place a serious restriction upon its transportation service and therefore constitute a burden upon interstate commerce. We do not believe such a result would obtain. Certainly, if the ordinance is valid, and we have held it is, we can see no harm in putting teeth in it.

■ A final argument is that, in the event the ordinance is upheld, it gives no time to the railroad in which to comply. In the recent case of City of Louisville v. Thompson, Ky., 339 S.W.2d 869, 873, in construing an ordinance in which no grace period was provided we said the ordinance "must be construed by necessary implication as allowing a reasonable time" to carry out its terms.

For the reasons shown we are of the opinion that the ordinance is valid and that appellee should be directed to carry out its terms.

Wherefore, the judgment is reversed.