SOUTHERN RAILWAY COMPANY v. CITY OF WINSTON-SALEM

No. 6921SC2

(Filed 26 February 1969)

1. **Constitutional Law § 11— exercise of police power — test of validity**

   When the exercise of the police power is challenged on constitutional grounds, the validity of the police regulation primarily depends on whether under all the surrounding circumstances and particular facts of the case the regulation is reasonably calculated to accomplish a purpose falling within the police power without burdening unduly the person or corporation affected.

2. **Constitutional Law § 11— police power — changed conditions**

   In determining the validity of an exercise of the police power, changed conditions as they arise may bring the subject matter in question within the approved testing principle of reasonableness or may remove it therefrom.

3. **Constitutional Law § 13; Municipal Corporations § 35; Railroads § 2— grade crossing improvements — allocation of costs**

   A State or its subdivisions, in the exercise of the police power, may validly allocate a portion, or under some circumstances even all, of the costs of grade crossing improvements to the railroads provided the allocation of costs is fair and reasonable under all existing circumstances.

4. **Constitutional Law § 13; Municipal Corporations § 35; Railroads § 2— ordinance requiring railroad to construct grade crossing warning device — allocation of costs**

   Municipal ordinance requiring a railway to install automatic warning signals at two grade crossings of its tracks by city streets and allocating the costs of the signals between the municipality and the railway *is held* a constitutional exercise of the police power for the promotion of the general welfare and public safety, the hazard to the public at the grade crossings arising solely because of the railway's tracks and the operation of its trains thereon, the railway benefiting from the signals in the form of a reduction of its potential tort liability, and the allocation of costs being reasonable under existing facts and circumstances.

5. **Railroads § 2; Highways and Cartways § 1— grade crossings — authority of Highway Commission — G.S. 136-20**

   G.S. 136-20, which gives the State Highway Commission jurisdiction to require installation of safety devices at railroad crossings and provides a formula for allocating the costs of such devices, by its express terms applies only to railroad crossings of a road or street forming a link in or a part of the State highway system.

6. **Highways and Cartways § 4; Municipal Corporations § 33— parts of State highway system — city streets**

   In a declaratory judgment action to determine the validity of a municipal ordinance requiring a railway to install automatic warning signals

at two grade crossings and allocating the costs of the signals between the municipality and the railway, findings by the court that the city streets at the grade crossings are not part of or a link in the State highway system *are held* supported by testimony that no State highway funds were used in construction or maintenance of such streets and that the State Highway Commission has never attempted to exert control over such streets, notwithstanding there was evidence that the streets provided the shortest or most practical route for motorists to travel between parts of the State highway system, the State Highway Commission being the sole authority to determine which roads and streets shall become a part of or link in the State highway system. G.S. 136-54, G.S. 136-58, G.S. 136-59, G.S. 136-66.2(b).

**7. Municipal Corporations §§ 33, 35; Railroads § 2— grade crossings — State highway system — city streets — G.S.136-20**

G.S. 136-20 does not adopt a statewide policy with respect to the allocation of costs of safety devices at railroad crossings which is binding upon municipalities in administering city streets which are not parts of or links in the State highway system.

Appeal by plaintiff from *Olive, J.,* 15 April 1968 Civil Session of Forsyth Superior Court.

Plaintiff railway company instituted this action for a declaratory judgment to determine the validity and enjoin enforcement of two ordinances adopted by the defendant City. The ordinances require the railway to install automatic warning signals at two points where city streets cross its tracks at grade level, one at 27th Street and the other at Bethesda Road in Winston-Salem. Both ordinances allocate payment for such signals as follows: The defendant City will pay one-half of the cost of installation up to a maximum of $5,000.00; the plaintiff railway is required to pay the balance of the installation cost and all of the costs of maintenance. Plaintiff prayed for judgment declaring the ordinances void under the Federal and State Constitutions as a taking of plaintiff's property without due process and adjudging that the section of the Charter of the City of Winston-Salem (Section 54, Chap. 232, Private Laws of 1927) under which the ordinances were enacted is unconstitutional and void as applied to the facts of this case. In addition plaintiff prayed for judgment declaring the ordinances void and in violation of the laws of North Carolina as an attempt to legislate in a field which has been preempted by State legislation. The parties waived jury trial and submitted the case to the court upon stipulations of fact and evidence presented at the hearing. The court entered judgment making findings of fact which, insofar as material to the questions raised on this appeal, are substantially as follows:

Plaintiff's railroad tracks, which are an integral part of its inter-

state railway system, are crossed at 27th Street and Bethesda Road by dedicated streets of defendant City of Winston-Salem. The crossing at 27th Street has existed at all times since 1925. Five accidents have occurred at this crossing during the period from 4 November 1952 through 12 January 1967, resulting in two fatalities, two persons being injured, property damage to motor vehicles totaling $1,-800.00, and damages to plaintiff's railroad engines in an unknown amount. A traffic count was conducted at this crossing for a 24-hour period commencing Thursday, 2 November 1967, which showed that 1,150 vehicles crossed plaintiff's tracks at this crossing. Another 24-hour traffic count conducted at this crossing on 21 July 1966 showed 885 vehicles crossing eastbound and 89 westbound. During this last mentioned traffic count, three southbound and five northbound trains or engines crossed 27th Street on plaintiff's tracks, with total blockage time of the crossing of two minutes and 57 seconds. Normal train traffic on plaintiff's tracks at 27th Street consists of two trains and six yard engines each 24 hours.

Plaintiff's tracks at Bethesda Road have been in existence for some 70 years and the crossing in the general vicinity of Bethesda Road has existed at all times at least since 1925. During the period from 23 December 1954 to 17 August 1966, five accidents have occurred at this crossing resulting in two fatalities, two persons being injured, property damage to motor vehicles totaling $4,100.00, and total damage to railroad engines and equipment of $2,125.00. A traffic count at this crossing conducted during a 24-hour period commencing Thursday, 2 November 1967, showed that 3,103 vehicles crossed plaintiff's tracks at Bethesda Road. Normal train or engine traffic on plaintiff's tracks at the Bethesda Road crossing consists of six trains and engines per 24-hour period.

The cost of installing a standard railroad crossing flashing light signal is approximately $13,250.00 for each installation, with annual maintenance cost for each installation of approximately $750.00. In 1967 the defendant City received $521,522.31 under the provisions of the Powell Act (G.S. 136-41.2 *et seq.*) while in the year 1925 such Act had not been enacted. In 1925 total motor vehicle registration in Forsyth County was 18,695 and in North Carolina was 341,126; in 1966 the comparable figures were 99,993 for Forsyth County and 2,587,117 for North Carolina. In 1963 the City collected $279,884.56 *ad valorem* taxes on automobiles and trucks.

Both the 27th Street and the Bethesda Road crossings of the plaintiff's tracks constitute hazardous crossings and a danger to persons and property. Neither 27th Street nor Bethesda Road as they

cross the plaintiff's tracks is a part of or a link in the State maintained system of streets and roads, nor have any North Carolina State Highway funds ever been used in the construction or maintenance of the streets as they cross the plaintiff's tracks. The North Carolina State Highway Department has never exerted or attempted to exert any control or supervision over either of the streets as they cross the plaintiff's tracks.

On these findings of fact the trial judge then concluded as a matter of law that each of the ordinances "are reasonable and necessary exercises of the power and authority of the Board of Aldermen of the City of Winston-Salem for the protection of the general welfare and public safety of the citizens of Winston-Salem and said ordinances are valid and subsisting ordinances of the City of Winston-Salem."

From judgment declaring both ordinances valid and directing plaintiff railway to comply with their terms, the plaintiff appealed.

*Joyner, Moore & Howison, by W. T. Joyner, Jr., and Deal, Hutchins & Minor, by John M. Minor and William K. Davis, for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by Norwood Robinson and Thomas E. Capps, for defendant appellee.*

PARKER, J.

[1] Appellant railway attacks the allocation of the cost of erecting and maintaining the required signal devices at the two grade crossings of its tracks by City streets made by the two ordinances here in question as an arbitrary and unreasonable exercise of its police powers by the defendant City under all existing conditions and circumstances, thereby violating the Fourteenth Amendment of the United States Constitution and Article I, Section 17, of the North Carolina Constitution. The standard by which a valid exercise of the police power is to be tested has been stated by the North Carolina Supreme Court in *Winston-Salem v. R. R.*, 248 N.C. 637, 642, 105 S.E. 2d 37, 41, as follows:

> "Therefore, when the exercise of the police power is challenged on constitutional grounds, the validity of the police regulation primarily depends on whether under all the surrounding circumstances and particular facts of the case the regulation is reasonable; that is, whether it is reasonably calculated to accomplish a purpose falling within the legitimate scope of the

police power, without burdening unduly the person or corporation affected."

**[2]** The Court in that case further pointed out that changed conditions as they arise may bring the subject matter in question within the operation of the approved testing principle of reasonableness or may remove it therefrom. Therefore, in determining the validity of the cost allocation made by the two ordinances here in question, we must determine whether such allocation was reasonable under all existing conditions and surrounding circumstances of this case.

The North Carolina Supreme Court in *Winston-Salem v. R. R., supra,* held that an attempted exercise of its police powers by the City of Winston-Salem to require the railroad company in that case to bear the entire expense of constructing a new trestle to replace an existing trestle carrying its tracks over an existing street, which new trestle was made necessary by the widening incident to construction by the City of a new street which intersected with the existing street underneath the trestle, was unreasonable under the facts and circumstances of that case. On somewhat similar facts, this Court has also held in the case of *Raleigh v. R. R.,* 4 N.C. App. 1, 165 S.E. 2d 751, that an attempt by the City of Raleigh to impose the entire cost of a new bridge carrying the railroad's tracks over a city street made necessary by reason of the widening of such street by the city in order to facilitate the flow of traffic to and from other areas in the City, was an unreasonable exercise of the police power. The facts and circumstances of the case presently before us, however, are clearly distinguishable from the special facts and circumstances with which the North Carolina Supreme Court was concerned in *Winston-Salem v. R. R., supra,* and with the facts and circumstances with which this Court was concerned in *Raleigh v. R. R., supra.* Neither of those cases involved exercise of the police power to eliminate or minimize any danger to the traveling public such as exists in a grade crossing of a city street by railroad tracks. In each of those cases the new construction was not required to eliminate or minimize any element of danger arising from the existence or location of the railroad tracks or the operation of trains thereon. On the contrary the new construction in each of those cases was required solely to accommodate a wider underpass for the city street made necessary to accommodate an increasing flow of vehicular traffic which was in no way related to the existence or location of the railroad tracks. The new construction in no way benefited the railroads, but benefited many of their principal competitors. Under such circumstances, and in view of the changed economic conditions as they bore upon the

financial condition of the City on the one hand and the railroad on the other, it was held that the attempted imposition of the entire cost of the new construction on the railroad would be so unreasonable and arbitrary as to fail to meet the accepted testing standard for a constitutional exercise of the police power.

[4]    In the case with which we are presently concerned, however, the grade crossings involved clearly constitute hazards to the traveling public. This danger arises solely and directly by reason of the existence of appellant's tracks and the operation of its trains thereon. Appellant railroad will receive direct benefits from the installation of the required signal devices in the form of a reduction in its potential tort liability. The facts and circumstances of this case, therefore, are more nearly comparable to those which existed in the earlier cases cited by the Supreme Court in *Winston-Salem v. R. R., supra,* particularly such cases as *Durham v. R. R.,* 185 N.C. 240, 177 S.E. 17; and *R. R. v. Goldsboro,* 155 N.C. 356, 71 S.E. 514. In discussing these and other cases which had upheld as reasonable, and therefore as constitutional exercises of the police power, imposition of costs upon the railroad of eliminating dangers at crossings, the North Carolina Supreme Court in *Winston-Salem v. R. R., supra,* said (248 N.C. 637, 649) the following:

> "The basic pattern of the foregoing decisions relied on by the City is that where impelling considerations of safety or convenience of the traveling public require alterations or improvements at a grade crossing, or that the grade crossing be eliminated entirely by carrying the tracks over a public way or the public way over the tracks by bridge, the duty of making the required alterations or improvements, or of providing the necessary bridge, ordinarily devolves upon the railroad company. The basis of this rule is the superior nature of the public's right to the safe and unimpeded use of streets and highways. *Erie R. R. v. Board of Utility Commissioners, supra* (254 U.S. 394, 65 L. ed. 322). The thread of decision seems to be that if the operation of the railroad, either at grade level or upon a particular type of elevated overhead support for its tracks, interferes materially with the public safety or with the public convenience in the exercise of the superior right of the public to use the public way, then the railroad company, being regarded in law as the agency causing the dangers or inconveniences, is charged with a legal duty to remedy the situation and may be required to make alterations and changes of its crossing facilities. *R. R. v. Minneapolis,* 115 Minn. 460, 133 N.W. 169, Ann. Cas. 1912D,

1029; *Erie R. R. v. Board of Utility Commissioners, supra.* However, the legal duty imposed by law on railroad companies and enforced by exercise of the police power in most of these crossing cases relates to the elimination of dangers and inconveniences to the traveling public which may be said to be of the company's own making in the sense that the railroad is located so as to interfere with the superior right of the traveling public to the use of the public way. And, where the police power is invoked to require a railroad company to pay for a crossing improvement in furtherance of public safety, the exercise of the power usually relates to measures designed to eliminate specific dangers at the crossing, to prevent or minimize crossing accidents. Similarly, where the police power is invoked to promote the public convenience, the exercise of the power usually relates to measures providing for the removal of conditions which unduly interrupt and impede the free movement of traffic at the crossing."

[3]  The Supreme Court of the United States has consistently held that a State or its subdivisions, in the exercise of the police power to promote public safety and convenience, may validly allocate a portion, or under some circumstances even all, of the costs of grade crossing improvements to the railroads; *Atchison, Topeka & S. F. R. Co. v. Public Util. Com.,* 346 U.S. 346, 98 L. ed. 51, 74 S. Ct. 92; *Erie R. R. v. Board of Public Utility Comrs.,* 254 U.S. 394, 65 L. ed. 322, 41 S. Ct. 169; subject to the limitation that such allocation of costs must be fair and reasonable under all existing circumstances; *Nashville, C. & St. L. R. Co. v. Walters,* 294 U.S. 405, 79 L. ed. 949, 55 S. Ct. 486. See Annotations, 79 L. ed. 966 and 98 L. ed. 62. Recent decisions of courts of some of our sister states are in accord. *Southern Pacific Co. v. Corporation Commission,* 83 Ariz. 333, 321 P. 2d 224; *Underwood v. R. R. Co.,* 105 Ga. App. 340, 124 S.E. 2d 758; *City of Shively v. R. R. Co.,* 349 S.W. 2d 682 (Ky.), (appeal dismissed by U.S. Supreme Court for want of a substantial federal question, 369 U.S. 120, 7 L. ed. 2d 611, 82 S. Ct. 653); *Sayreville v. R. R. Co.,* 44 N.J. Super. 172, 129 A. 2d 895.

[4]  In the light of the foregoing well established principles and giving consideration to all of the existing conditions and circumstances as disclosed by the record in this case, we agree with the conclusion of the trial court that the allocation of costs provided by the ordinances here in question is reasonable and that such ordinances are valid exercises of the police power on the part of the defendant City for the promotion of the general welfare and public

safety of its citizens. In arriving at this conclusion we have given particular consideration to the facts relating to changed economic and other conditions, growth in the number of motor vehicles, increases in the tax income derived by the defendant City from Powell Act funds and *ad valorem* taxes on motor vehicles, the relative use of the crossings here involved as between the plaintiff railroad and the automobile traveling public, and the other circumstances stressed by appellant in its brief. Giving full weight to these factors, but considering them together with the fact that the public dangers here involved are directly related to the existence of appellant's tracks and operation of its trains, and the further fact that minimizing the clear danger to persons and property at these grade level crossings benefits the railway as well as the public, we cannot agree with appellant's contention that the cost allocation provided by the ordinances is arbitrary or unreasonable. It follows that such ordinances are not subject to attack on constitutional grounds. Similarly, the section of the Charter of the City of Winston-Salem, Chap. 232, Section 54, Private Laws of 1927, under which the ordinances were enacted, is not unconstitutional *as it applies to the facts of this case.*

[5]    Apart from constitutional considerations, appellant contends that the ordinances are invalid as being contrary to G.S. 136-20. That statute provides that:

"Whenever any road or street *forming a link in or a part of the State highway system* . . . shall cross or intersect any railroad at the same level or grade, or by an underpass or overpass, and in the opinion of the chairman of the State Highway Commission such crossing is dangerous to the traveling public, or unreasonably interferes with or impedes traffic *on said State highway* . . ." (emphasis added),

the Commission may require the railroad to appear at a show cause hearing. If after hearing the Commission shall determine that said crossing is

". . . dangerous to public safety and its elimination or safeguarding is necessary for the proper protection of the traffic *on said State highway,* the Commission shall thereupon order the construction of an adequate underpass or overpass at said crossing or it may in its discretion order said railroad company to install and maintain gates, alarm signals or other approved safety devices if and when in the opinion of said Commission upon the hearing as aforesaid the public safety and convenience will be secured thereby. And said order shall specify that the cost of construction of such underpass or overpass or the in-

stallation of such safety device *shall be allocated between the railroad company and the Commission* in the same ratio as the net benefits received by such railroad company from the project bear to the net benefits accruing to the public using the highway, and in no case shall the net benefit to any railroad company or companies be deemed to be more than ten per cent (10%) of the total benefits resulting from the project. *The Highway Commission* shall be responsible for determining the proportion of the benefits derived by the railroad company from the project, and shall fix standards for the determining of said benefits which shall be consistent with the standards adopted for similar purposes by the United States Bureau of Public Roads under the Federal-Aid-Highway Act of 1944." (Emphasis added.)

[5, 6]   This statute by its express terms applies to railroad crossings of "any road or street *forming a link in or a part of the State highway system.*" (Emphasis added.) Appellant assigns as error the trial court's finding in the present case that neither 27th Street nor Bethesda Road at the points where they are crossed by appellant's tracks are a part of or a link in the State highway system. Appellant contends these findings were contrary to law and against the greater weight of the evidence. We do not agree. At the hearing of this case the local Division Engineer for the State Highway Commission testified that no State highway funds had ever been used in construction or maintenance of either of the city streets at the location of the railroad crossings here involved and that the State Highway Commission had never exerted or attempted to exert any control or supervision of either of said streets at such locations. This evidence clearly supported the court's findings. Even conceding there was evidence that one or both of these streets may have provided the shortest or most practical route for motorists to travel between parts of the State highway system, the State Highway Commission itself has the sole authority to declare what roads and streets shall be absorbed as parts of or links in the State highway system. G.S. 136-54, G.S. 136-58, G.S. 136-59. In the case of city streets, G.S. 136-66.2(b) provides that ". . . the governing body of the municipality and the State Highway Commission shall reach an agreement as to which of the existing and proposed streets and highways included in the plan will be a part of the State highway system and which streets will be a part of the municipal street system." Under these statutes it is for the State Highway Commission rather than for the courts to determine which particular roads and streets shall become a part or link in the State highway system.

[7] Appellant contends that even if the city street at the railroad crossings here involved are not considered to be parts or links in the State highway system, nevertheless defendant City was bound by the State policy implicit in G.S. 136-20. Appellant contends that when a municipal ordinance conflicts with State policy the conflict must be resolved in favor of the State policy, citing *Upchurch v. Funeral Home*, 263 N.C. 560, 140 S.E. 2d 17; *Davis v. Charlotte*, 242 N.C. 670, 89 S.E. 2d 406; *Cox v. Brown*, 218 N.C. 350, 11 S.E. 2d 152; *State v. Sasseen*, 206 N.C. 644, 175 S.E. 142; *State v. Stallings*, 189 N.C. 104, 126 S.E. 187. These cases, however, are clearly distinguishable from the present case in that here the language of the statute involved, G.S. 136-20, expressly and clearly limits its applications to railroad crossings of roads or streets which are parts of the State highway system. The hearing provided for is to be before the State Highway Commission and determination of the cost allocation as directed in the statute is to be made by the Commission. The explicit language chosen by the Legislature clearly negatives any intention that the statute should be construed as the adoption of a statewide policy binding upon municipalities in administering their city streets which were not parts or links in the State highway system. Had the Legislature intended the statute to be binding upon municipalities in all cases where railroads crossed its city streets, surely the Legislature would have employed language which expressed, rather than language which would negative, that intent.

The judgment of the superior court is

Affirmed.

MALLARD, C.J., and BRITT, J., concur.