No. 24080.

UNION PACIFIC RAILROAD COMPANY *v.* THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO.
(463 P.2d 294)

Decided December 29, 1969.

KNOWLES, HOPPER AND MOLEN, CLAYTON D. KNOWLES, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT LEE KESSLER, Assistant, WARREN D. BRAUCHER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

ON September 5, 1967, on the application of the city of Aurora, the Public Utilities Commission held a hearing to determine what kind of railroad crossing protection devices would be required to adequately protect the public at a junction consisting of four railroad tracks crossing Peoria Street at Smith Road in Aurora. Originally there had been but one track at this crossing, but because of recent industrial development in the area the railroad had placed three additional tracks over this crossing. Peoria Street itself had until recently been a sparsely used street with traffic of only about 100 cars a day, but because of the new I-70 highway and other developments, the street had been widened to four lanes

516

and was now carrying 6000 vehicles a day. The Commission found that under these circumstances a flasher system was necessary to provide adequate warning, and the cost of constructing such a warning system for a crossing by one track over the four-lane road would be about $25,500, while the cost of an adequate system for four tracks across the same road would be about $37,000. The Commission divided the $25,500 cost related to protecting a single track crossing as follows: ten percent to the city of Aurora, ten percent to the city of Denver, ten percent to the Union Pacific Railroad, and seventy percent to the highway crossing protection fund. The balance of the total cost of $37,000 necessary to construct an adequate warning device for the intersection at it presently existed was allocated to the Union Pacific Railroad on the theory that the three additional tracks were constructed for the sole benefit of the railroad. The order of the Commission was affirmed by the District Court.

The only issue before this Court involves construction of 1965 Perm. Supp., C.R.S. 1963, 115-4-6(2)(b) which empowers the Public Utilities Commission to apportion the cost of constructing railroad crossing protection devices between the railroad that owns the track on one hand and the department of highways, and interested town, city, or county on the other hand, with a portion of the latter cost allocable to the highway crossing protection fund to compensate for general public benefit.

▮ The position of the Union Pacific Railroad Company is that the statute referred to above sets the liability of the railroad at a flat ten percent of the total cost of construction, and that it was error for the Commission to allocate more than ten percent of the cost in this case to the railroad. We do not agree with the construction urged by the railroad, and we affirm the ruling of the trial court.

Both the railroad and the Commission agreed on oral argument that the wording of the statute in question is

ambiguous and does not make clear the legislative intent. The statute provides (1) that the Commission shall determine, after notice and hearing, how the cost shall be allocated between the railroad whose tracks are located at the crossing on the one hand, and the public and interested political subdivision on the other hand; (2) the Commission shall take into consideration the benefit, if any, which will accrue from the signals to the railroad; and (3) that in every case the part to be paid by the railroad "shall be ten percent" of the total cost of such signals. The parties agree that the first two provisions are in conflict with the third provision.

Because the language of the statute in question fails to expressly clarify the legislative intent, it is necessary for the court to go beyond the wording of the statute to ascertain its meaning. In so doing, in the past, this court has considered (1) the ambiguous language in connection with the context of the entire statute in which the language is employed, (2) the object which the statute was designed to obtain, and (3) the obvious consequences which would follow a construction either way. *City and County of Denver v. Holmes,* 156 Colo. 586, 400 P.2d 901; *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819.

 In construing a statute to determine the intent of the legislature, the court must give effect to every word, phrase, and clause of the statute, if possible. The effect of the interpretation urged by the railroad would be to render meaningless the first two parts of the statute in question which deal with the power to determine how to apportion the cost between the railroad and the public. Rather than render these two provisions meaningless, we agree with the interpretation given to the statute by the Public Utilities Commission and the district court which is that the Commission has the power to allocate part of the cost to the railroad with the limitation that in every case the cost to be born by the railroad shall be at least ten percent of the total cost.

The statute in question was passed in 1965 as an

amendment to C.R.S. 1963, 115-4-6. As it stood before the amendment, the statute gave the Public Utilities Commission the power to require the public utility to perform any ". . . act which the health or safety of the . . . public may demand." The statutory scheme of the 1965 amendment was to create a new method of financing safety devices for the protection of the public insofar as they related to railroad crossings. It created a system of allocating the cost of crossing protection between the railroad, the political subdivision involved, and a newly created highway crossing protection fund. One of the purposes of the statute was to permit the Commission in determining the cost to be chargeable to the railroad to take into account private benefit derived by the railroad from the crossing protection devices. The statute provided that after the sum chargeable to the railroad was determined, the remainder should be divided between the interested political subdivision and the highway crossing protection fund in order to compensate for the use of such crossing by the public generally. To interpret the statute as providing that the railroad would pay a flat ten percent of the expense in every case would be contrary to the purpose for which the statute was passed, because the power to make a proportionate allocation to the railroad based on the factor stated in the legislation would be lost.

The practical aspects of accepting one interpretation of the legislative intent or the other is clearly presented in the present situation. The finding of the Commission that the additional three sets of tracks were installed crossing Peoria Street solely for the benefit of the railroad is not challenged here. Likewise, it is unchallenged that the additional cost of constructing an adequate railroad protection device attributable to crossing four sets of tracks rather than one is $11,500. The language of the statute clearly states that the Commission shall take into account the benefit to the railroad, if any, to be derived from the crossing protection device.

To say that the railroad must be allocated a flat ten percent of the total cost of constructing the protection device would be to put a large burden of the cost solely attributable to the convenience of the railroad directly on the involved cities and on the public highway crossing protection fund, a result which we feel the legislative history does not contemplate.

The railroad points out that Senate Bill 20 (which is the statute here in question in its original form), as it originally read specified that an allocation of cost made to the railroad could not exceed ten percent. This provision was amended in the House of Representatives to provide that in every case the share allocated to the railroad shall be ten percent, and it was additionally provided that the railroad would bear the entire burden of maintaining the safety device after its construction. House of Representatives Journal, 1403, 45th General Assembly, 1st Session (1965).

The bill as it originally read permitted flexibility in the allocation of cost with a ceiling of ten percent. The text gave meaning to the first two portions of the statute dealing with the power to allocate a portion of the cost to the railroad taking into effect the benefit derived by the railroad. After being amended, these first two portions can retain meaning only if the statute is read as providing that allocation of cost can be made to the railroad with the ten percent acting as a minimum allocation.

The original wording of Senate Bill 20 may well have been influenced by the federal statute which limits allocation of cost to a railroad for construction of crossing safety devices on federally financed highway projects to not more than ten percent. 23 U.S.C. §130(b) (1964). While the state statute in question here provides for partial allocation to the highway crossing protection fund which is financed by state tax money, such a fund and the interested cities and counties do not have resources comparable to those of the federal government. With this important difference in mind, the subsequent

amendment of Senate Bill 20 to language different from that of the federal statute represents a reasonable modification of the federal model in order to protect limited public funds from dissipation for private benefit, and yet protect the railroad from having to bear the entire cost of the safety device.

It is our view that the legislature intended that the Commission should have the power to allocate cost to the railroad according to benefit derived subject only to the qualification that in no case could the cost allocated to the railroad be less than ten percent of the total cost of protecting the crossing and, the statute being ambiguous, it is so interpreted.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.