547 P.2d 234 (1976)
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff-Appellant,
v.
The PUBLIC UTILITIES COMMISSION, State of Colorado, and Douglas County, Colorado, Defendants-Appellees.
No. 26816.
Supreme Court of Colorado, En Banc.
March 22, 1976.
Rehearing Denied April 5, 1976.
Grant, Shafroth, Toll & McHendrie, P. C., Peter J. Crouse, Denver, for plaintiffappellant.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary A. Rashman, Asst. Atty. Gen., Denver, for defendantappellee, Public Utilities Commission.
*235 PRINGLE, Chief Justice.
This is an appeal by the Atchison, Topeka & Santa Fe Railway Co. (Santa Fe) from two decisions of the Public Utilities Commission, as affirmed by the Denver District Court, allocating the costs of crossing protection devices at two road grade crossings of Santa Fe tracks in Douglas County. We affirm.
Douglas County filed two applications with the PUC requesting an order authorizing the construction, operation and maintenance of automatic grade crossing protection devices at the Wolfensberger Road crossing and the Titan Road crossing. The applications were consolidated for hearing, and a hearing was held on March 27, 1974.
The hearing examiner found that both the Wolfensberger Road and the Titan Road are county roads within Douglas County, and that traffic is increasing yearly due to development in the area. The examiner further found that there was a need for additional protection or protective devices at the crossings. The examiner therefore recommended approval of the applications for both the Wolfensberger Road crossing and the Titan Road crossing. In both cases the examiner recommended that continuing maintenance work should be performed by the Santa Fe at its own expense for the life of each crossing, as required by 1965 Perm.Supp., C.R.S.1963, 115-4-6(2) (b).[1]
Pursuant to section 115-4-6(2) (b) the examiner also recommended an allocation of the cost of installation among the railroad, the highway division, and Douglas County. The examiner recommended allocating 25 percent of the cost of installation to the Santa Fe for the Wolfensberger Road crossing and 20 percent of the cost of installation to the Santa Fe for the Titan Road crossing.[2] The examiner interpreted the statute to prohibit consideration of the maintenance costs imposed upon the Santa Fe in recommending an allocation of the installation costs. The PUC adopted the examiner's findings of fact and conclusions in its order. The district court affirmed the PUC order. The Santa Fe contends here that the order violates its due process rights.

I.
Before reaching the constitutional issue, we must examine the statutory interpretation adopted by the PUC. We believe the statute was construed correctly. Section 115-4-6(2) (b) states that the commission is to allocate "the cost of installing, reconstructing, or improving such signals or devices . . ." By its express terms, the statute provides that the safety device *236 shall be maintained by the railroad corporation. There is no provision that such cost shall be allocated. To allow consideration of the cost of maintenance in determining the allocation of installation costs would render meaningless the statutory requirement that the maintenance cost be borne solely by the railroad, for an indirect allocation of that cost would thereby be effected.

II.
The Santa Fe contends that its due process rights were violated as a result of the interpretation placed on section 115-4-6(2) (b). The Santa Fe argues that, pursuant to the examiner's interpretation, the PUC failed to consider numerous relevant facts relating to the reasonableness of the cost allocation. However, the record clearly indicates that the only factor excluded from consideration was the cost of maintenance imposed upon the Santa Fe. Indeed, at the hearing all evidence offered by the Santa Fe was received and the examiner stated that the "Commission is required to allocate the costs of installing the device without considering maintenance costs or obligations after the device is installed . . ." It is clear from the record that only in reference to maintenance costs did the examiner, and hence PUC, refuse to consider evidence submitted. Consequently, we address the contention of the Santa Fe that the refusal to consider the cost of maintenance constituted a denial of due process.
The rule is well settled that ordinarily, the State may, under its police power impose upon a railroad the whole cost of installation of safety devices at grade crossings, or such part thereof, as it deems appropriate. Atchison, Topeka & Santa Fe Ry. Co. v. PUC, 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51 (1953); Nashville, Chattanooga & St. Louis Ry. v. Walters, 294 U.S. 405, 413, 55 S.Ct. 486, 487, 79 L.Ed. 949, 954 (1935); see Union Pacific RR Co. v. PUC, 170 Colo. 514, 463 P.2d 294 (1969).
We believe that the statutory elimination of consideration of the cost of maintenance in determining allocation of cost of installation does not render the police power here exercised unfair or unreasonable. The examiner specifically found that the crossing devices were necessary on the two county roads for local safety due, in part, to increasing local traffic. These findings are not challenged here. The allocation of cost to the railroad was only 20 percent for the Titan Road crossing and 25 percent for the Wolfensberger Road crossing. In Atchison, Topeka & Santa Fe Ry. Co. v. PUC, supra, the Supreme Court upheld an allocation to the railroad of 50 percent of the cost of grade separation improvements noting:
"[I]n the cases at bar, the improvements were instituted by the State or its subdivisions to meet local transportation needs and further safety and convenience, made necessary by the rapid growth of the communities. In such circumstances, this Court has consistently held that the cost of such improvements may be allocated all to the railroads." 346 U.S. at 352, 74 S.Ct. at 96, 98 L.Ed. at 60. (citations omitted; emphasis in original).
Furthermore, where protective devices are necessary for local safety, as here, the entire cost of installation may be imposed upon a railroad by statute. So. Pacific Co. v. Corporation Commission, 84 Ariz. 365, 329 P.2d 883 (1958), appeal dismissed for want of a substantial federal question, 359 U.S. 532, 79 S.Ct. 1136, 3 L. Ed.2d 1028 (1959); See So. Ry. Co. v. City of Winston-Salem, 275 N.C. 465, 168 S.E. 2d 396 (1969) (city ordinance required railroad to pay at least 50 percent cost of installation of signal devices and entire cost of maintenance where needed for safety, held constitutional).
The Santa Fe argues that Nashville, Chattanooga & St. Louis Ry. v. Walters, supra, dictates a holding of unconstitutionality in the instant case. In Nashville, a statute which required a railroad to bear one-half the cost of a grade crossing improvement was held to be violative of *237 due process. But, the claim of unconstitutionality in Nashville rested "wholly upon the special facts . . . shown." 294 U.S. at 413, 55 S.Ct. at 487, 79 L.Ed. at 954. The Court in Atchison, Topeka, supra, described the "special facts" present in Nashville:
"The improvement was not required to meet the transportation needs of [the community] and was being constructed without regard to that community's growth or to considerations of public safety and convenience resulting from such growth. The highway there under improvement was part of the State highway system and the grade was to be removed primarily as part of economic and engineering planning and to qualify the improvement of the highway for federal aid." 346 U.S. at 353, 74 S.Ct. at 97, 98 L.Ed. at 60.
It is apparent that the "special facts" present in Nashville are not present here. The fundamental rule applied in each case, including Nashville, is that an allocation of costs to a railroad does not abridge due process rights if it is reasonable and fair based on the facts of each particular case. The allocation of costs in the instant case was not unreasonable or unfair.
The judgment is affirmed.
NOTES
[1] Now section 40-4-106(2) (b), C.R.S.1973. The statute provides, in part:

"(b) Whenever the public utilities commission orders in any proceeding before it, regardless of by whom or how such proceeding was commenced, that automatic or other safety appliance signals or devices be installed, reconstructed, or improved, and operated at any crossing at grade or any public highway or road over the tracks of any railroad corporation, the commission shall also determine and order, after notice and hearing, how the cost of installing, reconstructing, or improving such signals or devices shall be divided between and paid by the interested railroad corporation, whose track or tracks are located at such crossing on the one hand and the division of highways and the interested city, city and county, town, county or other political subdivision of the state, on the other hand; but, in determining how much of the cost shall be paid by the railroad corporation, consideration shall be given to the benefit, if any, which will accrue from such signals or devices to the railroad corporation, but in every case the part to be paid by the railroad corporation shall be not less than ten percent of the total cost of such signals or devices at any crossing, and such orders shall provide that every such signal or device shall be maintained by such railroad corporation for the life of the crossing to be so protected. . . ."
[2] The cost of installing the Wolfensberger Road crossing device will be $30,000. The estimated cost of maintenance over the life of the device will be $45,000. The cost of installing the Titan Road crossing device will be $22,000. The estimated cost of maintenance over the life of the device will be $18,000.